## Case No. 9,087.

### The MARION.

[1 Story, 68;[1] 3 Law Rep. 250.]

Circuit Court, D. Massachusetts. May Term, 1840.

MARITIME LIENS — REPAIRS — DOMESTIC SHIP — SHIPWRIGHT IN POSSESSION—ORIGIN OF LIEN —HOW CONSIDERED IN ADMIRALTY.

1. There is no statute law in Massachusetts, which gives a lien in rem to shipwrights for building, equipping, or repairing ships.
  [Cited in Macy v. De Wolf, Case No. 8,933; The Alida, Id. 199.]

2. By the common law, no lien exists generally for repairs and work done on a domestic ship; but a shipwright has a lien for the repairs and

work done on such a ship, so long as she remains in his possession. And the owner can only devest that possession by a discharge of the lien. Yet, if the owner retain possession during the repairs, or if after the repairs are made, the shipwright voluntarily yield up the possession, his lien is gone.
  [Cited in Marsh v. The Minnie, Case No. 9,-117; Pendergast v. The Kalorama, 10 Wall. (77 U. S.) 212; The B. F. Woolsey, 7 Fed. 110; The Two Marys, 10 Fed. 923, 16 Fed. 700.]

3. It is of no consequence, how a lien arises under the local law, whether by statute or by common or municipal law. Whenever its existence is established, the jurisdiction of the admiralty attaches to it proprio vigore.
  [Cited in The Infanta, Case No. 7,030; Crapo v. Allen, Id. 3.360; Nall v. The Illinois, Id. 10,005; The Two Marys, 10 Fed. 925.]
  [Cited in Tapia v. Martinez, 4 N. M. 165, 16 Pac. 274.]

4. Under the facts and circumstances of this case it was held, that a lien attached upon a vessel by the common law, for materials furnished and repairs made, and that it had not been devested by a voluntary surrender of the vessel by the owner.
  [Cited in The Two Marys, 10 Fed. 926.]

[Appeal from the district court of the United States for the district of Massachusetts.]

Libel for repairs and materials for the schooner Marion, and work and labor done on her in the port of New Bedford, to which port the schooner belonged, in October and November, 1839, amounting in the whole to the sum of $221.49. There was no dispute about the amount due for the repairs, work, and materials. But when the repairs were undertaken, one Goodwin was the owner, and he subsequently transferred the schooner during the time of the repairs to the claimant [Lawrence] Grinnell. The answer insisted, that the libellant (McFarlin) had no lien on the schooner for repairs; but that they were a personal charge only against the owner. The original libel was jointly filed by Seth McFarlin and one William Spooner, the latter of whom asserted a distinct and independent claim for painting done by him on the schooner, amounting to the sum of $100. But an exception having been taken in the district court, that these distinct and independent claims could not, in the admiralty, be joined in one libel, it was agreed between the parties, that the libel should be severed, and that each libellant should proceed separately for his own claim. Upon the hearing in the district court, a decree was rendered in favor of the libellant (McFarlin), for the sum of $221.49; and from that decree, an appeal was taken to this court by the claimant.

Mr. Brigham, for libellant.

On the part of the libellant, it was admitted, that, by the general maritime law, shipwrights and material men had no lien upon a domestic ship for repairs or supplies. But it was contended, that, by the local law of Massachusetts, the shipwright had a lien so long as he kept possession of the ship, and that such lien could be enforced in the admiralty. In the case at bar, the claimant

[1] [Reported by William W. Story. Esq.]

had the ship in his possession, and he could no more be compelled to abandon that possession without being first paid, than a mechanic or artisan would be required to surrender any article, which he had made or repaired, without being first paid. Upon the question of lien, the counsel cited Peyroux v. Howard, 7 Pet. [32 U. S.] 324; The General Smith, 4 Wheat. [17 U. S.] 438; The Nestor [Case No. 10,126]; 3 Kent, Comm. 169; Story, Bailm. § 440; Mont. Liens; Abb. Shipp. 108. Upon the point of the jurisdiction of the admiralty, the counsel cited The Robert Fulton [Case No. 11,890]; Harper v. New Brig [Id. 6,090]; and Davis v. New Brig [Id. 3,643].

G. T. Curtis, for claimant.

For the claimant, it was admitted, that the court had full jurisdiction of the matter, and that the only question was, whether the libellant had a lien by the local law of Massachusetts. The vessel being a domestic ship, no lien is given by the general maritime law. There is no statute of this commonwealth giving such a lien; and what the libellant is to show, therefore, is, that he has a lien by the common law of Massachusetts. The common law lien is a mere right to detain the thing put into the party's possession to be repaired, until his charges are paid; a strict possessory lien founded on actual possession and a consequent right of detention. The Nestor [supra]; Abb. Shipp. p. 108, § 10. This, the counsel contended, is the unquestionable law of England; and to show, that the law of this country was the same, it was argued: 1. From the absence of all authority to show, that it was different. 2. From the recognition of this doctrine by this court in The Nestor. 3. From the various statutes passed by the state legislatures to amend the common law, and supply a lien, which should be operative out of possession. To show that the possession must be actual and exclusive, and so far as it is evidenced by locality, must be in the exclusive dominion of the party claiming the right of detention, he cited Abb. Shipp. p. 108; Story, Bailm. § 440; Story, Ag. § 352; Franklin v. Hosier, 4 Barn. & Ald. 341; Raitt v. Mitchell, 4 Camp. 146; Blake v. Nicholson, 3 Maule & S. 167; Chase v. Westmore, 5 Maule & S. 180; Ex parte Bland, 2 Rose, 91; Ex parte Hill, 1 Mad. 61; Ex parte Deeze, 1 Atk. 228; Pritchard v. The Lady Horatia [Case No. 11,438]. The idea of two concurrent liens of this sort, that is, of two concurrent rights of detention by parties having no privity of interest, is impossible. Pothier, Traité de la Possession, c. 4, § 1. For if the liens conflict, and the thing is sold without producing enough to pay both, what is to determine the apportionment? Liens, standing in the same rank of privilege, as those of different seamen for their wages, may be apportioned; because they do not depend on possession, and, therefore, do not involve the

idea of exclusion. But it is otherwise with liens founded on possession, which necessarily involves exclusion. Jacobs v. Latour, 5 Bing. 130. Hence, it was argued, that, as the record here shows two parties, each claiming the possession, without any privity of interest, and the evidence tended to show an actual possession by both at the same time, neither of them had such an exclusive possession, which was indispensable to give a power to detain the vessel. It was further argued, upon the evidence, that the libellant never took the vessel into his custody; but that she lay at a public wharf, where the dockage was charged to the vessel itself, and not to the libellant, and other mechanics came on board there and worked.

STORY, Circuit Justice. This is a libel against a domestic ship, for materials furnished and repairs made upon her in the port of New Bedford, in this district, to which port she belonged at the time of the repairs. Under such circumstances, it is admitted, that no lien attaches upon the ship by the general maritime law, as far as it is recognised and enforced in the courts of England and America. But the admiralty courts of this country possess a general jurisdiction in all cases of material-men, and shipwrights, for work done, and materials furnished for ships, engaged or employed in maritime commerce and navigation, which may be exercised in personam at all times; but can be exercised in rem only upon the maritime law, or in its silence, where the local law of the state or country, where the work and materials are applied, gives a lien. This was held in the case of The General Smith, 4 Wheat. [17 U. S.] 438; and the doctrine of that case has been constantly acted upon in this court, as well as in the supreme court, whenever the question has arisen, and has been required to be decided. See Peyroux v. Howard, 7 Pet. [32 U. S.] 324. See also, The Robert Fulton [Case No. 11,890]; Davis v. New Brig [Id. 3,643]. In the present case, there is no statute of this commonwealth, which gives a lien in rem to shipwrights and others for building, equipping, or repairing ships, although in most of the commercial states of the Union such statutes do exist. They are founded in a wise protective policy, and I can only express my surprise and regret, that our state legislature has not provided the like remedy for this most important and useful class of our citizens, especially as it has given to carpenters and others a lien on houses under similar circumstances. But, although no state statute exists on this subject, yet as we all know, by the common law, which is a part of the law of Massachusetts, every shipwright has a lien for repairs and work done on a ship, while she is in his possession; and the owner or purchaser cannot devest that possession, except by a discharge of that lien. But this lien is strictly founded upon

possession; and, therefore, if the possession either remain in the owner during the repairs, or after the repairs are made, the shipwright voluntarily yield up that possession without payment of his charges, his lien is gone, and is no longer capable of being enforced in any manner whatsoever.

These being the undisputed principles regulating this subject, two questions have been argued at the bar in the present case. The first is, whether, upon the whole evidence, there was any such possession of the schooner claimed by the libellant in this case, as created a lien for the repairs and the materials sued for, at the time when the libel was filed. The second is, whether, assuming such possessory lien then to exist, it is such a lien as can be enforced in the admiralty jurisdiction, considering the schooner to be a vessel employed (as without doubt she was) in maritime trade and navigation. Upon this last point, I do not think, that the slightest doubt can now be entertained. Since the decisions made in the supreme court, the question is not, how the lien arises under the local law, whether it be by statute, or by the common or by the municipal law. That is wholly immaterial. The lien is enforced, because it is of a maritime nature; and the moment its existence is established, the jurisdiction of the admiralty attaches to it proprio vigore. Such, as far as I know, has been the uniform understanding and practice, in all the admiralty courts of the Union. In respect to the other question, it involves rather the consideration of matters of fact, than of law. I pass over, without remark, every thing, which has been suggested at the argument, in respect to the joint possession, asserted in the original libel, by Spooner and the libellant (McFarlin), and their joinder, in one suit, of their respective independent claims for work, and labor, and materials. After the severance of the suit in the court below, the present appeal brings nothing, but McFarlin's claim, before the court; and the sole question is, not whether he and Spooner had, or could have, a joint possession upon their separate and independent claims and liens; but whether McFarlin had such a possession and lien, as he now asserts in his own libel, to sustain his separate suit.

The facts, as they appear in the evidence, are these. McFarlin is a shipwright by trade, and has his ship-yard, where he repairs ships, on a small island, about one half of which he hires of the owners in fee, Messrs. Randall & Haskell, who have also a wharf on the premises. McFarlin has been accustomed to use this ship-yard, and make repairs at or near the wharf, for about seven years. By a contract and understanding between Randall & Haskell and the libellant, the libellant is at liberty to repair any vessels at their wharf, and fasten them there; and the wharfage during the repairs, instead of being charged to the libellant, is

charged to the owner of the vessel repaired. In this very case, the schooner Marion was brought from a wharf on the other side of the channel by the libellant and his workmen and certain riggers, and fastened at the wharf during the repairs. The wharfage was charged to the Marion, and has not yet been paid by any person. During the time of the repairs by the libellant, from the 28th of October to the 21st of November, 1839, when they were completed, the libellant and his workmen were on board every day. One David Field also, during a part of the time, while these repairs were going on, was on board doing work as joiner, in the cabin; and his work was not completed until about the beginning of January, 1840. Spooner was doing the work of a painter on board during a part of the same period. While the repairs were making, Goodwin, the owner, having become embarrassed and in doubtful circumstances, the libellant became solicitous about his pay; and accordingly he constantly told Field, that he should insist upon his retaining possession of the schooner, until he was paid in full. He also directed one of his workmen, who was employed by him in a neighbouring shop, to keep a constant watch upon the vessel by day and by night, and if any person attempted to remove her without his leave, to prohibit him. The libel was filed in the district court, on the 19th of December, 1839; up to which time, and afterwards, the schooner remained fastened at the wharf, the libellant going constantly on board, and asserting his intention of holding the possession, to Field, who was at work on board; and during all this period no person attempted to remove the schooner. So far, then, as any evidence exists in the case, the original possession taken by the libellant, when he undertook to repair the schooner, and for this purpose carried and fastened her to the wharf near his ship-yard, was never disturbed or interfered with.

Now, upon this posture of the facts, it seems to me, that the possession of the schooner must be deemed to have been originally taken and held by the libellant from the time, when he fastened her to the wharf, until the time, when she was libelled. He took, and held all the possession, which, in the critical circumstances, he was able to take; and he asserted his right of possession openly. It is not necessary to say, that this possession was to be treated as to all intents and purposes a possession exclusive of the owner. In one sense, it was the possession of the owner, and under him, and not adverse to him, and in the nature of a bailment. But it was such a possession, as is, in my judgment, sufficient to found a lien upon that possession with the consent of the owner. If the schooner had been hauled up within the known limits of a ship-yard, owned or hired on a lease by the libellant, no one could doubt, that the possession of

the schooner there would be such a possession as would found a lien, even though other workmen for other purposes were admitted to be on board, such as ship joiners, and riggers, and painters. The possession for some purposes may well be deemed the possession of the owner, as for example, to entitle him to an action for any tort done to the vessel. But for the purpose of founding a lien in the shipwright, the possession must be deemed in the shipwright; as much so, as if the repairs had been made in an enclosed dock-yard of the ship-wright.

Then, does the fact, that the wharfage was to be charged to the owner of the schooner make any difference? I think not. It was a mere arrangement between Randall & Haskell and the libellant, for their mutual benefit, with which the owner, as such, had nothing to do. It amounted to an agreement on the part of Randall & Haskell, that they would look for their pay to the owner, and not to the libellant; but was not any waiver of the possession by the libellant, founded on his general use of that wharf for the purposes of his business. Under the arrangement between Randall & Haskell and the libellant, the wharf was as much to be deemed in his possession and under his control, for the purpose of the repairs, as, under his lease, were the neighbouring ship-yard and other grounds. Whoever seeks to devest an apparent possession of a shipwright, should, as I think, show, by incontestable proofs, that the real possession was understood between the parties to remain in the owner. That would naturally be inferred, if the ship should be repaired at the wharf or dock of the owner, or at the wharf or dock of a third person, by a direct contract between the owner of the wharf and the owner of the ship, with which the shipwright had no privity or connexion. But, here, the only arrangement actually made, is between the shipwright and the owner of the wharf; and this not for one vessel, but for all vessels, which the shipwright should or might repair there. The license was to him generally, and not for repairs for any owner in particular.

Upon the whole, my judgment is, that the decree ought to be affirmed with costs.