In the matter of the STEAMSHIP CIRCASSIAN, &c.

The states have the right to enact laws creating liens upon domestic ships or vessels, for supplies, repairs, &c. furnished them in home ports; and the act of the legislature of this state "to provide for the collection of demands against ships and vessels," passed April 24, 1862, is constitutional and valid.

An attachment may therefore be issued out of a state court against a steamboat, under that act, for supplies furnished for her in the city of New York, (her home port,) notwithstanding the provisions of the act of congress, giving to the district courts of the United States "exclusive cognizance of all civil causes of admiralty and maritime jurisdiction."

It was not intended in or by the cases of *Moses Taylor*, (4 *Wal.* 427,) and the *Ad. Hine* v. *Trevor*, (*Id.* 569,) or either of them, to declare any principle of exclusiveness of admiralty jurisdiction in the district courts of the United States under the constitution and the judiciary act of the United States, inconsistent with state statutory liens and state statutory proceedings *in rem*, to enforce them, for supplies or repairs to or for domestic vessels in the home port; though it was intended, in both cases, to declare a principle of exclusiveness inconsistent with state statutory proceedings *in rem* for supplies or repairs to or for *foreign* vessels.

Where warrants of attachment against a vessel are issued by justices of the Supreme Court under the act of the legislature, of April 24, 1862, sections 4 and 6, as officers or commissioners; as the 17th section of the act directs the sheriff to return his proceedings under the order for the sale, to the officer who *granted the order* for the sale, and subsequent sections provide for an *issue* between the contestants for the proceeds of the sale; until this issue, the court cannot become possessed of the case, for the purpose of making any order. And until such issue, *it seems*, even the justice or officer who issued the warrants has no power to make any order not specified or provided for by the act. Still less can a *different* justice not sitting as a court, make such order, on motions not made in court, or in any action.

It is a general principle that a sheriff must act on his own responsibility, in the execution of process; and the court will not direct or advise him as to the manner of executing it.

SUTHERLAND, J.   The steamship Circassian is a domestic vessel, owned by a New York corporation.   The New York warrants issued by justices of the Supreme Court, under the New York act of April 24, 1862, (*Session Laws of* 1862, *p.* 956,) were all as I understand it, for supplies or stores furnished for the vessel, in her home port, or for work done, or materials, or other articles furnished for or towards repairing, furnishing, or equipping her, in her home port.

In the matter of the Steamship Circassian.

The Supreme Court of the United States in 1819, in the case of *The General Smith*, (4 *Wheat*. 438,) and in 1861, in the case of *The Steamer St. Lawrence*, (1 *Black*, 522,) fully recognised the right of a state to create by state legislation, liens in favor of material men, for stores and supplies furnished for domestic vessels in the home port. In the case of the *General Smith*, it was held that the ship being a domestic ship, and the supplies having been furnished at her home port, Baltimore, *there was by the general maritime law no implied lien*, and the decree of the circuit court affirming the proceedings *in rem*, was reversed, on the ground that there was no statute of Maryland creating a lien. In the case of the *St. Lawrence*, the decree of the circuit court affirming the proceedings in rem in the district court, was affirmed, on the ground that there was a statute of New York creating a lien. And in *Peyroux* v. *Howard*, (7 *Peters*, 324, *decided in* 1833,) the process against the vessel was upheld, on the ground of a lien created by a law of Louisiana.

In 1843, in the case of *The Barque Chusan*, (2 *Story*, 455,) the constitutionality of the former New York statute, (2 *R. S.* 493,) curiously enough became a question, before Judge Story, who had delivered the opinion in the case of *The General Smith*, and he held in the case of *The Barque Chusan*, that the statute of New York, was perfectly constitutional as applied to cases of domestic vessels, but not as to foreign vessels. (*See also The Marion*, 1 *Story*, 68 ; *and The Ellen Stuart*, 5 *McLean*, 269.)

The Supreme Court of the United States, by adopting and publishing in 1844, (3 *How. U. S.* 3,) the twelfth rule of admiralty practice, which authorized process against the vessel, where the state law gave a lien for repairs and supplies in the domestic port, recognized and affirmed in the most deliberate and formal manner the power and right of state legislatures to create liens in such case, or to that extent.

Even the alteration of this rule in 1858, (21 *How.*) to the effect that the proceeding against the ship and freight *in rem* for supplies, repairs, or other necessaries, should no longer apply to cases of domestic ships, may be received as a recognition by the Supreme Court of the United States of the right of the states to create liens for supplies, repairs, &c. as to domestic vessels in the home port.

In *Maguire* v. *Card*, (21 *How.* 251,) at the same term, and soon after the alteration of the twelfth rule of admiralty practice referred to, Judge Nelson said : " We have at this term amended the twelfth rule of the admiralty, so as to take from the district courts the right of proceeding *in rem* against a domestic vessel for supplies and repairs, which had been assumed on the authority of a lien given by state laws, it being conceded that no such lien existed according to the admiralty law, thereby correcting an *error*, which had its origin in this court, in the case of the *General Smith* (4 *Wheat.* 439,) applied and enforced in the case of *Peyroux and others* v. *Howard and Varion*, (7 *Peters*, 324,) and afterwards partially corrected in the case of *The Steamboat New Orleans* v. *Phebus*, (11 *Peters*, 175, 184.) In this last case, the court refused to enforce a lien though *it had been given by the local laws of the state of Louisiana*, the same as in the case of supplies and repairs of the vessel. *We have determined to leave all these liens depending upon state laws, and not arising out of the maritime contract, to be enforced by the state courts.*"

Can any one suggest why this determination of the Supreme Court of the United States should impair, or affect, the constitutionalty of state statutes, giving liens for supplies or repairs as to domestic vessels in the home port ? Can any one suggest why, or how, if the admiralty courts of the United States were not or cannot exercise jurisdiction in a certain way, in a certain case, it follows that the states cannot authorize state courts or state officers to exercise jurisdiction in that way, in that case ? Can any one suggest

why the adoption of the twelfth rule of admiralty practice by the Supreme Court of the United States in 1844, and the practice under it, till the first day of May, 1859, when the other alteration of the rule in 1858 took effect, was not a full and complete recognition not only of the right of the states to create liens as to domestic vessels in the home port, but also of the right of the states to enforce such liens by state process or proceeding *in rem ?* True, neither in the case of *The St. Lawrence,* (1 *Black,*) nor in *Peyroux* v. *Howard,* (7 *Peters,*) did the court in words say, that the lien could have been or could be enforced by a state process, or proceeding *in rem* by or through state officers or courts, or in the way prescribed by state legislation, but neither did the court say, or intimate, that the lien could not have been, or could not be, so enforced. And the court did in these cases actually enforce the state liens. Surely the court did not intend in so doing, to recognize the right of the state to create or declare the lien theoretically or in the abstract, without recognising the right of the state to provide or declare the means, or the way of enforcing it ; nor surely could the court have thought that the state liens were created for the mere purpose of having them enforced in the admiralty court only.

If, after adopting the state liens as to domestic vessels in the home port, and declaring that such liens might be enforced in admiralty, the Supreme Court of the United States in any particular case, had taken pains formally, to say that the state which created such liens had not only a right to create them, but also a right to enforce them, one might have been excused for thinking that that court had either a great tendency to verbosity, or greatly underrated the intelligence of any one who had occasion to look at its opinions.

I have not met with a dictum, suggestion, or intimation, in any reported case, that New York, or any other of the states, has not the right to give and to enforce *in rem* by its

own process, liens for supplies and repairs, as to domestic vessels in the home port. I have not met with a dictum, suggestion, or intimation in any reported case, that the adoption and enforcement, (till the alteration of the twelfth admiralty rule took effect,) by the Supreme Court of the United States of state liens, did or could oust the state of its process or proceeding *in rem*, or did, or could affect the right of the state to give such process or proceeding, or the right of the party having the state lien, to resort to and use the state process or proceeding *in rem*, if he chose to do so.

I have not met with an intimation or suggestion in any reported case, that a state could not give and enforce *in rem* a lien, when or where, it was not claimed by the Supreme Court of the United States, that there was an implied lien by the general maritime law or Code, or arising by the maritime law, from the contract.

In the case of the *St. Lawrence* (1 *Black*,) the point was taken, that the jurisdiction of the courts of admiralty of the United States, under the constitution and the judiciary act of 1789, could not be enlarged by the adoption of state liens on vessels, but this point was answered, (how satisfactorily or conclusively it is not for me to say,) by Chief Justice Taney's separating and distinguishing the lien and process *in rem* to enforce it as a *remedy*, from the claim or maritime contract, of which it had been held in the case of *The General Smith*, (4 *Wheat.*) that the admiralty had jurisdiction *in personam*.

What has been said, and perhaps rather elaborately said, has been said, mainly in view of the opinions and decisions in two recent unreported cases in the Supreme Court of the United States, one *The Steam Vessel Moses Taylor*, plaintiff in error, v. *Wilson Hammons*, in which the opinion was by Mr. Justice Field; the other *The Steamboat Ad. Hine*, plaintiff in error, v. *Matthew R. Trevor*, in which the opinion was by Justice Miller, which cases it was claimed and elaborately urged by more than one of the counsel who argued the

In the matter of the Steamship Circassian.

motions in the matter of the *Steamship Circassian,* before
me, established a principle of exclusive jurisdiction in ad-
miralty, under the constitution of the United States, and
the judiciary act of 1789, inconsistent with the right of any
state to *enforce by process or proceedings in rem,* a lien
for repairs or supplies, even as. to domestic vessels, in the
home port.

Of course the importance of the question, whether the
Supreme Court of the United States has established a
principle of exclusive admiralty jurisdiction to this extent,
cannot be over estimated.  If it has the result evidently is,
not only that no statutory state lien, even as to domestic
vessels in the home port, can be enforced by state statutory
process or proceedings *in rem,* but also, that no such state
lien can be or will be enforced by process or proceedings *in
rem* in admiralty, until the Supreme Court of the United
States revokes or nullifies its alteration in 1858, of the
twelfth rule of admiralty practice adopted in 1844, and, of
course, that there is, or can be, no remedy *in rem* by way or
on the ground of lien, (except the common law possessory
lien of mechanics,) for supplies or repairs for a domestic
vessel in the home port, unless, indeed, that court has in these
recent cases decided, or until it should decide, reversing the
uniform doctrine of the court .since the case of *The General
Smith,* (4 *Wheat.*) *that by the general maritime law, there
is, or may be, an implied lien for supplies or repairs
furnished or done, for a domestic vessel in the home port.*

The constitution of the United States had given the Su-
preme Court of the United States jurisdiction of all cases of
admiralty and maritime jurisdiction ; the 9th section of the
judiciary act of 1789 had declared that the district courts
of the United States should have "exclusive original cogni-
zance of all civil causes of admiralty and maritime jurisdic-
tion," saving to suitors the right of a common law remedy,
and the Supreme Court of the United States in 1819, in the
case of *The General Smith, (supra,)* by Judge Story, de-

clared, that though admiralty had a general jurisdiction in cases of material men by which it could entertain a suit *in personam*, and though for repairs or supplies to or for a foreign ship, or to or for a ship in a port of a state where the ship did not belong, the general maritime law gave the party a lien on the ship itself for his security, and hence could maintain a suit *in rem* in admiralty to enforce his lien, yet that for repairs and necessaries in the port or state to which the ship belongs, *there was no lien implied by the general maritime law*, and hence, there could be no proceeding or suit *in rem* in admiralty, *on the ground of a lien implied by the general maritime law*.

This case, and this doctrine were recognized by the Supreme Court of the United States, directly and indirectly, in many reported cases, some of which have been mentioned, and by the adoption of, and the practice under, the 12th admiralty rule of practice, which has been referred to, and by the alteration of that rule in 1858 ; and I suppose it may be said to have been the settled doctrine of that court, when the recent cases of the "Moses Taylor". and the "Ad. Hine" were decided, for it is evident that Judge Nelson, in speaking in *Maguire* v. *Card*, (21 *How.*) on the error "which had its origin in this court in the case of the *General Smith*," (4 *Wheat.* 439,) referred to the practice of enforcing state liens for supplies and repairs for domestic vessels, and not to the doctrine, that by the admiralty law there was no lien in such cases. Indeed, he expressly says, that it is conceded that there was no lien by the admiralty law in such cases.

I suppose, independent of express contract or special legislation, there can be, *without a lien*, no process or proceeding *in rem* against a vessel for repairs or supplies ; at all events, the Supreme Court of the United States, have assumed throughout that there could not be, in admiralty.

The question then is, has the Supreme Court of the United States in either the "Moses Taylor," or the "Ad. Hine," decided or established any principle of admiralty jurisdiction,

In the matter of the Steamship Circassian.

inconsistent with the doctrine that by the general admiralty or maritime law, there is no implied lien for repairs or supplies to or for a domestic vessel in her home port, and that without a lien there can be no process or proceeding *in rem* in admiralty for such repairs or supplies.

I have looked somewhat into the reported cases for the history of the theory and practice of admiralty jurisdiction in the United States, and though I find that history suggestive of the general tendency of authority to enlarge itself, and though it must be conceded, that portions of the opinions of Justices Field and Miller in these cases, and perhaps I should say the general tenor of their reasoning as to the exclusiveness of the jurisdiction of the district courts, would seem at first to lead to the conclusion that admiralty jurisdiction under the constitution and the judiciary act, for any purpose, or to any extent, even for the purpose of a personal judgment *only*, necessarily excluded a state statutory remedy or proceeding *in rem*, because it was not a common law remedy, and because process, or a proceeding *in rem* was, in most cases, an admiralty remedy, yet a careful consideration of these opinions and of the history of admiralty jurisdiction and practice in the United States in the reported cases, has led me quite clearly to the conclusion, that it was never intended in or by the cases of the "Moses Taylor" and "Ad. Hine," or either of them, to carry the doctrine or principle of exclusiveness to this extent; that it was never intended in or by either of these cases, to declare any principle of exclusiveness inconsistent with state statutory liens and state statutory proceedings *in rem* to enforce them, for supplies or repairs to or for domestic vessels in the home port, though I think it must be conceded that it was intended in both cases, to declare a principle of exclusiveness inconsistent with state statutory proceedings *in rem* for supplies or repairs to or foreign vessels. But I do not know that the principle of exclusiveness to this extent was new. Certainly Judge Story

declared the same principle in the case of the *Barque Chusan,* (*ubi supra,*) and it may be, that it was implied in the case of the *General Smith* and other cases above referred to.

Certainly the court was not called upon by the case either of the " Moses Taylor," or the " Ad. Hine," to say that admiralty jurisdiction under the constitution and judiciary act, for any purpose, or to any extent, even for the purpose of a personal judgment only, necessarily excluded a state statutory remedy *in rem,* because it was not a common law remedy.

In the case of the " Moses Taylor," the ship was a foreign ship, that is foreign to California, and the contract was not only a maritime contract, but there was, by the general maritime law an implied lien for the breach of it, at least so I suppose, and so Mr. Justice Field assumed ; and, of course, the process *in rem* by admiralty law and practice followed. So in the case of the " Ad. Hine," after Justice Miller had arrived at the conclusion that the case was a maritime case of collision, of which the district court had jurisdiction, the implied lien and the admiralty process *in rem* followed.

Justice Field, near the conclusion of his opinion, does say : " It is not a remedy in the common law courts which is saved, (by the judiciary act, to suitors,) but *a common law remedy.*" This is certainly true, but it does not follow, nor do I think Justice Field meant to be understood as saying that it followed, that a state could not give a suitor any other than a common law remedy *because the judiciary act saved to him a common law remedy.*

Though the constitution of the United States and the judiciary act may permit a suitor in a given case to have a common law remedy *in personam* either in the district or state court, it certainly does not follow, that the state may not provide another or further remedy for the suitor in that case, not known to the common law, and which the admiralty court cannot give, or which the constitution and judiciary act does not authorize it to give. I have examined this question as to the extent of the principle of exclusiveness

In the matter of the Steamship Circassian.

declared in the "Moses Taylor" and "Ad. Hine," with care, not only from the immediate pressing importance of the question in this great commercial city, but also because one of the justices of the Supreme Court of this district, whose opinion I have before me, came to a different conclusion, in the "*Matter of the attachment of the steamboat Josephine.*"

But, though I am clearly of the opinion, that the Supreme Court of the United States did not, in the cases of the "Moses Taylor" and "Ad. Hine," or either of them, intend to declare any principle of exclusive admiralty jurisdiction at all inconsistent with the enforcement of state liens for supplies or repairs as to domestic vessels, by state proceedings *in rem*, yet I have not been able to see how I can grant, perhaps I should say decide, either of the motions in the matter of the steamship *Circassian.*

These motions are not made in any action. They are not made in court, or before me, sitting as a court. I did not issue the warrant under which the vessel was last sold by the sheriff. The warrants in his hands were issued by justices of the Supreme Court, under the act of April 24, 1862, (§§ 4 *and* 6,) as officers or commissioners.

The 17th section directs the sheriff to return his proceedings under the order for the sale to the officer who *granted the order* for the sale, and subsequent sections provide for an issue between the contestants for the proceeds of the sale.

Certainly until this issue, the *court* cannot become possessed of the case, for the purpose of making any order; and until this issue, I should doubt the power even of the justice or officer who issued the warrant, to make any order if not specified or provided for by the act.

By the 31st section, any proceeding commenced under it, before one judge, may be continued before another judge of the same court, in the absence, or inability of the judge before whom the proceeding was commenced, or by his order, but there is nothing before me, to give me jurisdiction under

this section, even conceding the power of the justice who issued the warrant, under which the Circassian was last sold.

Moreover, if I had heard these motions as a court, with all the powers of a justice of the Supreme Court, at chambers, or special term, I should have doubted the regularity or propriety of determining in these motions, the contested questions of fact involved in them, and as to which the affidavits are very contradictory, and of making orders which would be, or which would operate, mainly, as instructions to the sheriff, how to execute process.

The general principle undoubtedly is, that the sheriff must act on his own responsibility in the execution of process; that the court will not direct or advise him as to the manner of executing it. See *Bowie* v. *Brahe*, (4 *Duer*, 676, *and note*,) particularly the reason given by Chief Justice Oakley, for the rule.

Certainly in no view of the case, or of the contested questions of fact, could I order the marshal of the eastern district to abandon his claimed seizure and custody of the vessel; nor do I see how I could enforce such an order, if I should make it; and certainly, if I had the power, I ought not to order the purchaser at the sheriff's sale to pay the balance of his bid, until the sheriff can deliver the vessel; unless, indeed, the sheriff *could* and did sell subject to the seizure by the marshal, and to all the claims and interests represented by him; but the question of law, whether he could regularly so sell, and the question of fact, whether he did so sell, are two of the questions, which I doubt my power effectively to determine in these motions, and which I doubt the propriety or regularity of determining, if I had the power.

The result is, that all the motions must be and are denied, without costs to any or either of the parties, and without prejudice to any other or future action, or proceeding, that may be advised.

[AT CHAMBERS, November, 1867, before *Sutherland*, Justice.]