## Case No. 5,038.
FRANCIS et al. v. The HARRISON.
[1 Sawy. 353; 2 Abb. (U. S.) 74.] 1
District Court, D. California. Sept. 26, 1870.

Milton Andros, for interveners.
W. W. Cope, for mortgagee.

HOFFMAN, District Judge. The question presented in this case is whether a material man claiming a lien under the laws of this state upon a domestic vessel, is entitled to payment out of the surplus proceeds in the registry, in preference to a mortgagee of the vessel.

By the sixth chapter of the practice act of California, it is provided that all steamers, vessels, etc., "shall be liable for supplies furnished for their use at the request of their respective owners, masters, agents and consignees, and for materials furnished for their construction, repair or equipment."

The act further provides, "that said several causes of action shall constitute liens upon all steamers, vessels and boats, and have priority of payment in their order herein enumerated, and shall have preference over all other demands; provided, such liens shall only continue in force for the period of one year from the time the cause of action occurred."

If this statute be constitutional and operative, it is evident that the material man has by law a lien and right to priority of payment in preference to all other demands; and that this right must be recognized by the court which has in its possession the surplus proceeds which remain after satisfying the maritime liens on the vessel.

From the time of the decision in the case of The General Smith, 4 Wheat. [17 U. S.] 438, the supreme court has held in numerous cases that no lien was created by the maritime law in favor of material men supplying domestic ships in their home ports.

In respect to demands of this description, "the case is governed," says the supreme court, "altogether by the municipal law of the state, and no lien is implied unless it is recognized by that law." The General Smith [supra]; Peyroux v. Howard, 7 Pet. [32 U. S.] 324. It was further held that when such liens were recognized by the state law, they might be enforced in the district courts, according to the course of the admiralty.

The twelfth rule in admiralty, adopted by the supreme court in 1844, expressly provides "that proceedings in rem shall apply to cases of domestic ships where by the local

1 [Reported by L. S. B. Sawyer, Esq., and by Benjamin Vaughan Abbott, Esq., and here compiled and reprinted by permission. The syllabus is from 2 Abb. (U. S.) 74, and the opinion is from 1 Sawy. 353.]

law a lien is given to material men for repairs, supplies, and other necessaries." No recognition could therefore be more emphatic of the constitutionality of state laws creating liens of this description, and of the jurisdiction of the national courts to enforce them.

The distinction too, between the rights created by the state law, and the remedy afforded by it, was also recognized—for the national courts enforced the right by an admiralty proceeding, in the usual form, and not in the manner prescribed by the state law.

In 1858, the twelfth rule was repealed, and proceedings in rem, in cases of domestic ships for supplies, repairs, or other necessaries, were prohibited. The reasons for the repeal of the rule are given by the court in the case of The St. Lawrence, 1 Black [66 U. S.] 522. The court says: "The state lien was, however, enforced, not as a right which the court was bound to carry into execution upon the application of the party, but as a discretionary power which the court might lawfully exercise for the purpose of justice, when it did not involve controversies beyond the limits of admiralty jurisdiction."

The court, after referring to the inconveniences of enforcing such liens in the admiralty, says: "Such duties and powers are appropriate to the courts of the state which created the lien, and are entirely alien to the purposes for which the admiralty power was created, and form no part of the code of laws which it was established to administer." Id. 531.

We have here a distinct recognition of the right of the states to create liens on domestic vessels in cases where none exists by maritime law, and to enforce them by appropriate proceeding.

In the case of The Belfast, 7 Wall. [74 U. S.] 645, which is the latest decision on the subject, it is held that the states "may create these liens, and enact reasonable rules and regulations for their enforcement."

It is apparent therefore: 1st. That the contract of a domestic material man is a maratime contract, and of admiralty jurisdiction. 2d. That it may still be enforced in the admiralty by a suit in personam; and might constitutionally be enforced by a proceeding in rem, where a lien has been by the state law engrafted on the contract. But that on grounds of convenience this proceeding has been prohibited. 3d. That liens created in such cases by state laws are valid, and the states may provide reasonable rules and regulations for their enforcement in their own courts.

It is contended that, as a necessary consequence of these propositions, the state legislatures have the right to authorize a proceeding in rem to enforce liens created by state laws, and not existing under the maritime law.

In support of this view, various authorities are cited: The Circassian, 50 Barb. 490; Id.

501; 4 Ill. 504; 4 Mo. 244; 41 Mo. 491; 2 Pars. Adm. §§ 154, 155; The Maggie Hammond [9 Wall. (76 U. S.) 435].

It is urged that in the cases of The Moses Taylor, 4 Wall. [71 U. S.] 411, and Hine v. Trevor, Id. 555, where a contrary doctrine is supposed to have been held, the liens attempted to be enforced in the state courts by a proceeding in rem, were not liens owing their existence solely to the state law, but were liens created by the general law maritime. That the question before the court was as to the validity of a pretension avowedly set up by the state courts to exercise general admiralty jurisdiction concurrently with the United States courts of admiralty. That the right of the states to authorize proceedings in rem to enforce liens created by state laws, was not in question; and that the language of the court must be construed with reference to the circumstances of the cases presented. That in subsequent cases the supreme court has explicitly declared the power and duty to enforce liens of this class, to be appropriate to the courts of the state which created the lien (The St. Lawrence, ubi supra), and that the states may provide for their enforcement, "by reasonable rules and regulations" (The Belfast, ubi supra). That the proceeding in rem is the most speedy, appropriate and effectual, if not the only practical, means of giving effect to these liens. That to deny the right of the material man to avail himself of that proceeding in a state court, and at the same time to decline to enforce his lien in the admiralty, is to leave him without a remedy, and to reduce the declaration of the validity of his lien to the announcement of a barren proposition, unaccompanied by any substantial right, or available means of enforcing it.

The force of these suggestions is admitted. It has been recognized in the cases above cited. But in my opinion the answer to them is conclusive. In the cases of The Moses Taylor and Hine v. Trevor, the general principle is established that "whenever the district courts of the United States have original cognizance of admiralty causes by virtue of the act of 1789 [1 Stat. 73], that cognizance is exclusive, and no other court, state or federal, can exercise it, with the exception always of such concurrent remedy as is given by the common law." "This," it is announced in Hine v. Trevor, "must be taken as the settled law of the court."

It is also in those cases explicitly declared that a proceeding in rem is not a remedy afforded by the common law, and therefore not within the exception which saves to suitors such concurrent remedy as is given by the common law.

We have already seen that the contract of the domestic material man is of original admiralty cognizance in the district courts of the United States. The case therefore clearly falls within the principle laid down by the supreme court. To interpolate into the doc-

trine as announced by the court, the exception in favor of proceedings in rem to enforce liens, attached by state laws to a certain class of maritime contracts, would not only be inconsistent with the language of the supreme court, and with the principles on which the decision rests, but would give rise to great embarrassments and perplexities.

If proceedings in rem are allowed in the state courts, to enforce the liens in question, all holders of maritime liens should be allowed to intervene and establish and enforce their claims according to their respective priorities. If the state courts proceed to adjudicate upon these claims, they will unquestionably be exercising admiralty jurisdiction, and might do so to any extent under cover of a proceeding initiated by the domestic lien holder. If they decline to entertain such claims, how can justice be done?

Again.—If the holder of the maritime lien should resort to the court of admiralty, a conflict of jurisdiction would ensue, for another tribunal, authorized to exercise jurisdiction in rem, would be already in possession of the vessel.

The state courts are necessarily bound to pursue exactly the provisions of the statutes under which they acquire jurisdiction. In the California act, six classes of cases are enumerated, in which alone liens are to be enforced, or, it would seem, recognized: (1) For services rendered on board vessels. (2) For supplies furnished to them. (3) For materials furnished in their construction, repairs, etc. (4) For wharfage and anchorage within the state. (5) For non-performance or mal-performance of any contract for the transportation of property or persons. (6) For injuries committed by them to persons or property.

These liens are declared to have priority in the order in which they are enumerated, and the provisions of the law embrace "all steamers, boats and vessels"—foreign as well as domestic.

When judgment is obtained against any vessel, the sheriff is directed to apply the proceeds of the sale—1st. To the payment of the wages of mariners, boatmen, etc. 2d. To the payment of the judgment and costs. 3d. To pay over any balance to the owner, master, agent or consignee, who may have appeared in the action.

The rights of salvors, the holders of bottomry bonds, and perhaps of those who have advanced moneys to the master, seem thus to be wholly ignored, while an attempt is made to fix the respective rank of liens, some of which are confessedly maritime.

The sheriff is directed in all cases, after paying any claims for wages, to apply the proceeds to the satisfaction of the judgment—that is, the payment of the particular lien on which suit is brought. The balance he is to pay to the owner of the vessel. Neither the bottomry bondholder or the salvor is authorized to intervene in the suit; nor is either allowed by the statute to attach the vessel to enforce his demand.

No provision is made for any proclamation, publication, or other notice to parties interested in the vessel, except that a summons is to be served on the master, mate, or other person in charge. The vessel is seized under a process of attachment, and the other proceedings are to be conducted in the same manner as in actions against individuals. When judgment is recovered, the vessel is sold under an execution issued to the sheriff, and the proceeds are distributed as already stated.

The supreme court in The Moses Taylor considered the action authorized by the statute of California, "a proceeding in the nature and with the incidents of a suit in admiralty," and observes, that "the jurisdiction of the courts of California is maintained on the assumed ground, that the cognizance by the national courts of civil causes of admiralty and maritime jurisdiction is not exclusive, as declared by the ninth section of the judiciary act of 1789." It was to this claim, on the part of the states, to concurrent jurisdiction on admiralty causes, that its attention was chiefly directed.

It is unnecessary to consider whether the proceeding under the statute of California has all the incidents of a suit in rem in the admiralty, or to inquire what is the nature of the title obtained by the purchaser under an execution issued in such a proceeding.

It is decided "that the statute of California, to the extent to which it authorizes actions in rem against vessels for causes of action cognizable in the admiralty, invests her courts with admiralty jurisdiction," and is therefore unconstitutional. The statute has been referred to in this opinion to illustrate the difficulties which attend the exercise by state tribunals of any jurisdiction in rem or quasi in rem in cases of admiralty cognizance, and the reasonableness as well as policy of the simple and clear principle announced by the supreme court, that in all such cases the jurisdiction of the courts of admiralty is exclusive, except so far as a concurrent remedy exists at common law, and that a proceeding in rem, authorized by a state statute, is not such a concurrent remedy.

Nor is it true that if the right to proceed in rem in the state courts be denied to the material man, he is left wholly without remedy. His lien may be enforced like any other mortgage, by appropriate proceedings.

The right of prior satisfaction out of the proceeds of the sale on execution against the owner of any vessel may be conferred, on the material man, by law, and his lien may be recognized and enforced in the distribution of estates of deceased persons, or of bankrupts. It may also be recognized by courts of admiralty, when disposing of remnants and surplus proceeds in the registry. In these and other ways, the lien created by

state laws may become effectual. And it is to be supposed that it was to provisions of this character that the supreme court referred when it observed that the states might enact reasonable rules and regulations for their enforcement.

This construction of the language of the opinion in The Belfast is more reasonable than to suppose that the court referred to proceedings in rem, and thus overruled the doctrine clearly announced in The Moses Taylor and Hine v. Trevor, that such a proceeding in a state court was inadmissible in any case of which the district courts of the United States have original cognizance, as an admiralty cause.

From the foregoing, it results that the state law is invalid only so far as it attempts to authorize actions in rem, against vessels for causes of action cognizable in the admiralty; but the validity of the lien itself, especially when given by the state law in general terms, without specific conditions and limitations, inconsistent with the rules and principles which govern implied admiralty liens, is, as is said in the case of the St. Lawrence, "undoubted."

It is urged, that inasmuch as the remedy, by a proceeding in rem, afforded by the statute, is unconstitutional, the right is totally lost, and the lien created must be treated as nonexistent. But we have seen that the lien is created by the California statute in general terms: "The said several causes of action shall constitute liens upon all steamers, vessels," etc. A mode of enforcing these liens is provided, but it is not declared that this remedy shall be exclusive, nor that the courts shall refuse to recognize the liens except in the proceeding authorized by the statute.

It is probable that in all the cases where, under the former twelfth rule, liens conferred by state laws were enforced by the admiralty courts, those laws authorized a proceeding in rem in the state courts—or a suit against the vessel by name—but this circumstance did not impair the validity of the liens, nor affect the right of the admiralty courts to enforce them. A right which they still retain, though its exercise has been prohibited on grounds of expediency.

The New York statute, under which the supreme court held that an "undoubted lien" was acquired, provided, like the California statute, for an action against the vessel by name, and authorized a proceeding much more closely resembling a suit in admiralty. It results, that the states have clearly the power to engraft upon such causes of action cognizable in the admiralty, liens which, although they cannot be enforced in the state courts, by a suit in admiralty, or a proceeding in rem, are nevertheless valid, and should be recognized by this court in the distribution of surplus proceeds of any vessel sold to satisfy a maritime lien, or, by parity of reasoning, which have

come into its possession under a proceeding in bankruptcy.

No question was raised at the hearing, as to the respective priorities of persons claiming liens under the state laws, and the holders of a prior mortgage recorded under the laws of the United States—for the claims of material men which accrued prior to the date of the mortgage, are sufficient to absorb all the surplus proceeds in the registry.

The fund in court, must, therefore, be applied: First, to the satisfaction of any maritime lien which has been proved. Second, to the payment pro rata of the claims of material men entitled to liens under the state law. An order to this effect will be entered.

Since the above was written, the supreme court of this state has decided that a state law authorizing a proceeding in rem by a domestic material man for supplies furnished in the home port of a vessel, is unconstitutional.