## Case No. 4,698.

### The FAVORITE.

[2 Flip. 86; [1] 25 Int. Rev. Rec. 202.]

District Court, E. D. Michigan. Oct. 15, 1877.

F. H. Canfield, for libellant.

H. C. Wisner, for respondent.

## Case No. 4,699.

### The FAVORITE.

[3 Sawy. 405; [2] 7 Chi. Leg. News, 305; 23 Pittsb. Leg. J. 18; 7 Leg. Gaz. 289.]

District Court, D. Oregon. Aug. 12, 1875.

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

[2] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Joseph N. Dolph and Joseph Simon, for the Oregon Iron Works.

W. W. Upton and Charles Upton, for E. Spedden and others.

H. Y. Thompson and George Durham, for Smith Bros. & Co.

A. C. Gibbs, for Northrup & Thompson.

Benton Killen, for Bulger and others.

DEADY, District Judge. In pursuance of a decree of this court made in the suit of Thomas Merril et al. for wages, against the steam-tug Favorite, said tug was, on May 8, 1875, sold for the sum of $2,900. After satisfying the decree, there remained in the registry of the court $2,075.91 of the proceeds of the sale. Pending the suit, persons intervening for their interests libelled the vessel for various sums.

Among others, Eugene Spedden et al. filed a libel for the sum of $5,297.60, the value of certain engines, machinery and materials, which, it was alleged, had been furnished by them to J. C. Fox, the owner of said vessel, for the purpose of building and equipping her.

Upon exceptions to this libel it was dismissed, because it appeared therefrom that the intervenors had taken a conveyance of three-fourths of the vessel in satisfaction of the claim, or that they had waived their lien, by an agreement giving Fox until May 1, 1876, to pay for the materials—more than a year from the time of their delivery.

The other intervenors were twelve in number, and their claims amounted in the aggregate to $1,707. Four were for supplies furnished the tug while engaged in navigating the waters of this state, but elsewhere than at this port, where she was enrolled and her owner resided; while the remaining eight were for labor and materials furnished at this port, in the latter part of the year 1874, for the purpose of building and equipping the vessel.

On May 14, the Oregon Iron Works, a corporation existing under the laws of Oregon, filed a petition under the admiralty rule 43, for the payment to it of the sum of $1,443.75 out of said proceeds, alleging that it held a mortgage, duly recorded in the custom house at Astoria, on November 19, 1873, upon the tug Sedalia, which was destroyed

by fire in June, 1874, for the sum of $1,500, the price of the boiler and machinery therein; and that afterwards the owners of said tug Sedalia, Eugene Spedden et al., aforesaid, sold said boiler and machinery to said Fox, who placed the same in the tug Favorite, with the knowledge and consent of the petitioner, said Fox at the same time agreeing in writing with petitioner that as soon as said boiler and machinery were placed in the Favorite, he would give it a mortgage on the vessel to secure the payment of the sum due from Eugene Spedden et al., on account of said boiler and machinery, to which agreement said Spedden et al. then and there assented; and, that said Fox failed to execute such mortgage to petitioner, but did, on November 9, 1874, give Thomas A. Bulger a mortgage upon said vessel, to secure the payment of a note made by said Fox to said Bulger on October 31, 1874, for the sum of $1,317, with interest at the rate of one per centum per month, which mortgage was recorded in the custom house at Portland, on November 10, 1874; and that said Bulger "had actual and legal notice" of petitioner's mortgage upon the Sedalia and "full knowledge" of the agreement aforesaid. The petition prays that the sum due on the note of said Spedden et al. to petitioner for said boiler and machinery, namely, $1,443.75, be first paid to petitioner out of said proceeds.

On July 13, Thomas J. Bulger filed a petition under said admiralty rule for the payment to him out of said proceeds of the sum due on the note and mortgage aforesaid, for $1,317; alleging that said note was given to petitioner by said Fox on account of certain debts then due "petitioner and others for labor as shipwrights in the construction of the steam-tug Favorite." Exceptions were filed to these petitions and libels, and the whole were heard and submitted together.

It is too plain for argument that the iron works acquired no interest in the Favorite, and therefore is not entitled to any portion of these proceeds, by virtue of the agreement for a mortgage with Fox. It is not enough that it had an agreement for an interest; it must have had a definite legal interest in the thing at the time of the sale. Neither had it the lien of a material-man. The boiler and machinery were furnished to the Favorite not by the iron works, but by Spedden et al., who were the owners of the same. As has been stated, so far as they are concerned, the claim for the materials has been satisfied by a conveyance of three-fourths of the vessel, or the lien discharged by extending the credit to Fox beyond the year during which the local law gave them a lien. The mortgage of the iron works was upon the Sedalia, and if upon her destruction it still had a lien upon her boiler and machinery into whomsoevers' hands they might come, it certainly waived it when it consented that they might be sold to Fox by the mortgagors, to be used in the construction of the Favorite. The fact that the corporation made this arrangement or consented to this transaction, relying upon the agreement with Fox for a mortgage upon the Favorite, does not affect the question. If Fox has failed to keep his agreement in this respect, that is a matter which cannot be remedied here. This court cannot enforce specific performance of this contract, but must distribute the proceeds among those who appear to have had an interest in the vessel, without reference to the unperformed agreements between them or any of them and third persons.

But suppose Fox had complied with his agreement, the result would be the same. The claims of the laborers and material-men, including that of Bulger's, will more than absorb the proceeds. The mortgage of the iron works, if it had one, being not to secure a debt for materials furnished by it to the Favorite, but a debt due it from Spedden et al., would be postponed to these claims.

In this view of the matter, it is unnecessary to consider the intensified allegation in the corporation's petition—that Bulger had "full knowledge" of its agreement with Fox. Certainly the agreement for a mortgage can have no greater effect than the mortgage itself would. Besides, Bulger being a creditor of the owner for labor performed upon the vessel, and having by statute a lien upon her for the debt, I do not see why he had not a perfect right to take a mortgage upon the vessel for the same, even if he had actual notice of the agreement with the corporation for one. No injury would be thereby done to the iron works, because Bulger's claim, both on the grounds of date and cause, would be preferred to it, without the aid of a mortgage. Nor is it admitted, apart from any question of fraudulent preference, but that Bulger might have taken a mortgage upon this vessel to secure any debt due him from the owner, although he knew at the time that the iron works had an agreement with such owner for a mortgage to secure a debt due it.

Bulger claims that he is entitled to be paid before the intervenors, upon the ground that the lien of a mortgage, duly recorded in the custom house under section 4192 of the Revised Statutes, which provides: "No bill of sale, mortgage, hypothecation or conveyance of any vessel of the United States, shall be valid against any person other than the grantor or mortgagor, his heirs and devisees and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of customs where such vessel is registered or enrolled. The lien by bottomry on any vessel, created during her voyage by a loan of money or materials necessary to repair or enable her to prosecute a voyage, shall not, however, lose its priority, or be in any way affected by the provisions of this section,"—is to be preferred to that of

a material-man, particularly one whose lien arises under the laws of the state.

In support of this position counsel for Bulger cites The Grace Greenwood [Case No. 5,652]. In that case it was held that the liens of the material-men were not available under the state law (Illinois); and if they were, that being subsequent in point of time to the mortgage, it was to be preferred to them. See The Skylark [Id. 12,928]. But in this case the claims of the material-men are prior in point of time to the mortgage, with the exception of a few items of small value in one of the accounts.

What effect is to be given to a mortgage under this section as against liens arising under the maritime or state law, for materials or supplies furnished in the construction or navigation of the vessel, has not been considered by the supreme court; and the rulings of the lower courts have not been uniform upon the subject.

In Aldrich v. Aetna Ins. Co., 8 Wall. [75 U. S.] 496, the court said that in the Case of White's Bank, 7 Wall. [74 U. S.] 646, "It was held that the recording of the first mortgage in the collector's office, under the act of congress, protected the interest of the mortgagee against subsequent purchasers or mortgagees by its own force irrespective of any state law on the subject." There is nothing in the language of the section that indicates an intention to enlarge the operation of a mortgage on a vessel, or place the lien of it in any better condition, with reference to other liens, than it was before. The act from which the section was taken July 29, 1850 [9 Stat. 440], provides for the registration of conveyances and mortgages of vessels of the United States at the port of enrollment, so that all persons dealing in such property may conveniently ascertain the ownership of it, and then, as a sanction to this provision and as a means of enforcing obedience to it, section 4192 declares that any conveyance or mortgage, not so recorded, shall be invalid as to third persons not having actual notice thereof.

So far nothing is said about the effect of a mortgage when registered, and but for the proviso excepting "the lien by bottomry" from the operation of the section, it is not apparent how it could ever be construed as preferring or deferring any lien to another. But on account of this proviso it seems to have been inferred that as "the lien by bottomry" is the only one expressly excepted from the operation of the section, therefore all others are within its purview, and thereby made subordinate to that of a mortgage. But this conclusion assumes that the section without the proviso would give a mortgage a preference over a "lien by bottomry." Yet there is not a word in the section on the subject of liens, or that in any way prescribes the effect of a mortgage as against any other lien under any circumstances. The section simply declares that a mortgage upon a vessel of the United States shall not be valid unless registered as therein prescribed; but as to the effect of a valid mortgage, absolutely or relatively, I think it must be held to leave it where it found it. In short, the proviso suggests a scope to the section which its language cannot possibly support. It is therefore superfluous and unnecessary, and, as has often happened in legislation, was probably inserted out of abundance of caution or dearth of knowledge.

My impression is that Bulger gained no right as against the prior liens by taking and recording his mortgage under this section.

But, on the other hand, the material-men claim that under the law of the state (Code Or. p. 657, § 18), their claims are preferred to those of a mere mortgagee. It is not necessary to consider the objection, that it is not in the power of the state to prefer the lien of a material-man to that of a mortgagee, though I have not heard any good reason why it cannot—at least in the case of liens not given by the maritime law, and until congress prescribes a different rule upon the subject. Bulger is not a mere mortgagee. His claim is for labor bestowed upon the vessel in its construction by himself and others whose interests he either represents or owns, it is immaterial which. By taking a mortgage he did not change the nature of his claim, whatever effect it may have had upon the security. The cause and date of his lien place it among the most favored by the state law, and he is entitled to share equally in the distribution with the eight intervenors whose claims are for materials furnished for the construction of the Favorite.

But the other four intervenors, namely, McLean, Gray, Corno, and the Oregon Trading Co., whose claims in the aggregate amount to $284.96, are entitled to be first paid out of the proceeds. These claims are for supplies furnished to the vessel to enable her to be navigated, subsequent to the date of the mortgage. True, they were furnished within the state, but they were not furnished at the home port, in my judgment. Under the ruling of the Lottawana, lately decided by the supreme court (21 Wall. [88 U. S.] 558), what constitutes a home port is yet an open question. But I think upon reason and convenience, the home port ought to be the one where the vessel is enrolled. Away from that place, whether in or out of the state in which her owner resides, she is supposed to be in itinere, and therefore relying upon her credit for the purchase of the necessary supplies to complete her voyage.

Assuming, then, that these supplies were not furnished at the home port, the debts due therefor are such as the general admiralty law gives a lien for. This lien is preferred to one given by the local law in favor

of a material-man. The Grapeshot [Case No. 5,702]. And as against a prior mortgagee, such liens should be preferred, upon the obvious consideration that the mortgagee of a vessel which is left in the possession of the mortgagor, impliedly authorizes the latter to pledge her for supplies obtained upon her credit and necessary to her navigation.

The fund will be distributed as follows: 1. The four claims for supplies will each be paid in full, with legal interest from the date of the filing of the respective libels therefor. 2. The remainder of the proceeds will be divided pro rata between the eight claims for materials and the claim of Bulger. legal interest being allowed on the claims of the material-men from the respective dates of their intervention and upon the claim of Bulger, from October 31, 1874, the date of the note therefor, at the rate therein specified.

The matter will be referred to the clerk to ascertain the sum payable to each of the intervenors according to the rule herein announced, and upon the coming in of his report, a final decree will be entered accordingly.