# Case No. 798.

### BALDWIN v. The BRADISH JOHNSON.

[3 Woods, 582.] [1]

Circuit Court, S. D. Alabama. Dec. Term, 1878. [2]

MARITIME LIENS—PRIORITIES—STATE AND FEDERAL LAWS.

1. The lien of a mortgage on a vessel, duly recorded according to section 4192, Rev. St., is inferior to all strictly maritime liens, but is superior to any subsequent lien for supplies furnished in the home port, given by state legislation.

[Cited in The Josephine Spangler, 9 Fed. 775; The Lillie Laurie, 50 Fed. 221. Overruled in The Madrid, 40 Fed. 678. Disapproved in The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 502.]

[See The John T. Moore, Case No. 7,430; The Grace Greenwood, Id. 5,652; The Kate Hinchman, Id. 7,621. Principle doubted in The De Smet, 10 Fed. 483; The Josephine Spangler, 11 Fed. 440. Contra. The General Burnside, 3 Fed. 228; The Rapid Transit, 11 Fed. 322; The J. W. Tucker, 20 Fed. 129; The Arctic, 22 Fed. 126; The Venture, 26 Fed. 285; The Amos D. Carver, 35 Fed. 665; The Wyoming, Id. 548; The Menominie, 36 Fed. 197; Clyde v. Steam Transportation Co., Id. 501; Zollinger v. The Emma, Case No. 18,218.]

2. A state cannot, by its legislation, create a lien upon a vessel which shall have priority over one already existing by virtue of an act of congress.

[Cited in The Lillie Laurie, 50 Fed. 221. Disapproved in The Canada, 7 Fed. 733.]

3. No court can, by rule, create maritime liens or change the order of existing liens.

[Appeal from the United States district court for the southern district of Alabama.

[In admiralty. Libel by Edward Baldwin against the steamer Bradish Johnson, (J. M. Stone and J. H. Stone, claimants.) Other

creditors intervened, claiming liens for seamen's wages, supplies furnished in foreign and home ports, taxes, etc. Thereafter Charles Cavaroc Jr., intervened, claiming a lien by virtue of a mortgage of the steamer. The decree of the district court postponed the lien of the mortgage to the lien for supplies in the home port in The Bradich Johnson, Case No. 1,770. Charles Cavaroc, Jr., appeals. Reversed.]

The Bradish Johnson was seized upon a warrant issued upon the libel of Edward Baldwin. Other creditors, some of whom had furnished supplies to the steamer in her home port, and others of whom held admiralty liens for seamen's wages, and for supplies furnished in foreign ports, filed libels. All the cases were consolidated, the steamer was sold by order of the district court, and the proceeds paid into the registry of the court. Thereupon, under admiralty rules thirty-four and forty-three, Charles Cavaroc, Jr., filed his intervention, claiming the proceeds of the steamer, after the payment of costs and the general admiralty liens, by reasons of a mortgage upon said steamer, which, he averred, had been duly recorded according to the act of congress, before any other lien upon the boat had been created. On March 11, 1876, one Vincent J. Wood, who was at that time the sole owner of the Bradish Johnson, sold her to J. M. Stone and J. H. Stone, citizens of Alabama, for the price of $7,200, of which three thousand dollars were paid in cash, and the residue, $4,200, was evidenced by the notes of the purchasers, which they secured by a mortgage duly executed on the boat. This mortgage was recorded in the office of the collector of customs of the port of Mobile, on April 18, 1876, and about that date the Bradish Johnson was enrolled in said custom house, and the port of Mobile has ever since been her home port.

The Code of Alabama declared as follows: "Section 3465. A lien is hereby created on all ships, steamboats and other water crafts, whether the same be registered, enrolled, licensed, or not, that may be built, repaired, fitted, furnished, supplied or victualed within this state, for work done or materials supplied by any person within this state, for or concerning the building, repairing, fitting, furnishing, supplying or victualing such ships, steamboats or other water crafts, and for the wages of the masters, laborers, stevedores and ship-keepers of such vessels, steamboats or other water crafts, in preference to other debts due and owing from the owners thereof, which said lien may be asserted in any court of competent jurisdiction. Section 3466 Lien lost if action not brought in six months.—b. The lien hereby created shall expire after the lapse of six months from and after the maturity of the claim or debt, unless within the said six months judicial proceedings shall have been commenced to assert such lien." Under these provisions of

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[2] [Reversing Case No. 1,770.]

the statute law, and after the registration of said mortgage, a large number of liens had been created for supplies, etc., furnished the Bradish Johnson in her home port of Mobile, and other ports of the state of Alabama. The district court referred the claims of all the creditors of the boat to a commissioner to report a tableau of distribution. The commissioner reported accordingly, and recommended the payment, first, of the costs of suit; second, of the maritime liens under the general admiralty law; third, liens under the state law, and these being sufficient to exhaust the proceeds of the steamer in the registry of the court, there was nothing left for distribution to the mortgagee. The report of the commissioner was confirmed by the decree of the district court. From this decree Cavaroc appealed to this court.

Alex. McKinstry, Thomas H. Herndon, John Little Smith, Peter Hamilton, T. A. Hamilton, Wm. Boyles, and G. Y. Overall, for libelants.

John T. Taylor and Thos. N. Macartney, for Cavaroc, the mortgagee.

WOODS, Circuit Judge. The appellant Cavaroc concedes that liens by the general maritime law, such as for seamen's wages, supplies furnished the steamer in a foreign port, take precedence of his mortgage, but he denies that the lien given by the law of Alabama to material men and others, for repairs and supplies in the home port of the steamer, is entitled to priority over the lien created by the registration of his mortgage under the act of congress. This contention presents the main question brought up by the appeal. Section 4192 of the Revised Statutes of the United States, which became a law July 19, 1850, declares that "no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States shall be valid against any person other than the grantor or mortgagor, his heirs and devisees and persons having actual notice thereof, unless such bill of sale, mortgage, hypothecation or conveyance is recorded in the office of the collector of customs where such vessel is registered and enrolled. The lien by bottomry on any vessel, created during her voyage by a loan of money or materials necessary to repair, or enable her to prosecute her voyage, shall not lose its priority, or be in any way affected by the provisions of this section." I think it clear that the effect of this section is, that where a bill of sale, mortgage, hypothecation or conveyance of a vessel is recorded in accordance with the terms of the law, it is valid, not only against the mortgagor, his heirs and assigns, and persons having actual notice thereof, but against other persons.

It is not contended by the appellant that a mortgage so recorded would prevail over strictly maritime liens, but it is claimed that its lien is better than any subsequent lien not recognized by the general maritime law. In the case of The Lottawanna, 21 Wall. [88 U. S.] 558, it was held by the supreme court, that according to the maritime law, as accepted and received in this country, material men who furnish repairs and supplies to a vessel in her home port, do not acquire thereby any lien upon the vessel. The question is, therefore, reduced to this, can the states, by the passage of laws giving a lien upon vessels for supplies furnished in the home port, override a lien created by a mortgage recorded according to the act of congress and declared to be valid against all liens except maritime liens? No reason is perceived why supplies furnished in the home port of the vessel, where the mortgage is of record, should take precedence of the mortgage. The act of congress, in effect, gives validity to the lien of the mortgage, from the date of its record. No state law can postpone this lien in favor of one subsequently made.

It is insisted, however, that a contract for supplies to a vessel is a maritime contract, that the state law of Alabama has given a lien for such supplies, and that by an amendment to admiralty rule twelve, promulgated by the supreme court. on May 6, 1872—[Webb v. Sharp,] 13 Wall. [80 U. S.] 14,—the material man is allowed to sue in rem, in the admiralty courts, to enforce such lien, and that, therefore, the lien takes precedence of the lien of a mortgage duly recorded before the debt for supplies was contracted. In other words, it is claimed that the twelfth rule, as it now stands, gives the same lien for supplies in the home port as that given by the general maritime law for supplies furnished in a foreign port. In reply to this, it is sufficient to say that neither the supreme court of the United States, nor any other court, can. by rule, either create liens or postpone one lien to another. It may regulate the practice and method of procedure, but it cannot displace one lien in favor of another. So, by allowing material men, who have furnished supplies to a vessel in her home port, to proceed in rem, when the state law has given a lien, the court does not attempt to give the lien any precedence over prior liens, by mortgage or otherwise. In the case of the Lottawanna, supra, the court says (page 579): "As to the recent change in the admiralty rule (the 12th) referred to, it is sufficient to say that it was simply intended to remove all obstructions and embarrassments in the way of instituting proceedings in rem in all cases where liens exist by law, and not to create any new liens which, of course, this court could not, in any event, do, since a lien is a right of property, and not a mere matter of procedure."

The priority of a lien is also a right of property, and the supreme court could not, by rule, any more interfere with the priority

of liens than it could create liens. So that the case stands just as it did before the amendment to the twelfth admiralty rule, and the question comes back, can a state, by its legislation, create a lien which shall have priority over one already existing by virtue of an act of congress? The question carries with it its own answer: White's Bank v. Smith, 7 Wall. [74 U. S.] 646; Aldrich v. Aetna Ins. Co., 8 Wall. [75 U. S.] 491. In my judgment the lien of a mortgage, duly recorded, is superior to any subsequent lien for supplies in the home port, given by the legislation of a state. This view has been held by Judge Drummond, in The Grace Greenwood, [Case No. 5,652,] and in The Kate Hinchman, [Id. 7,-620.] See, also, Scott's Case, [Id. 12,517.] It has also heretofore been held by the circuit court for the district of Louisiana. See the case of The John T. Moore, [Id. 7,430.] It follows, therefore, that the mortgagee is entitled to be paid out of the proceeds of the boat, next after the payment of the costs and general maritime liens, and before the liens created by the state law, for repairs and supplies in the home port. A decree in accordance with these views has been handed to the clerk for entry upon the minutes of the court.