## THE CANADA.

*(District Court, D. Oregon. May 12, 1881.)*

1. CONSTRUCTION OF STATE STATUTE.

It does not appear that the New York court of appeals have decided (39 N. Y. 19; 43 N. Y. 554; 59 N. Y. 554; or 71 N. Y. 413) that so much of the act of April 24, 1862, as gives a material man a lien upon a vessel for supplies furnished in her home port is void because in conflict with the grant of admiralty jurisdiction to the United States; and if it did, this court is not bound to follow it, because the question as to its validity arises under the constitution of the United States, and not the state, and is therefore a federal one.

2. LIEN OF MATERIAL MAN AND MORTGAGEE.

When the local law gives a lien for supplies furnished to a vessel in her home port, and provides that such lien shall be preferred to that of a mortgagee, a court of admiralty will enforce it accordingly: and such lien will be so enforced by a court of admiralty when the local law is silent on the subject, upon the grounds: (1) That the lien of a maritime contract, whether it arises under the local law or the maritime law, is practically a maritime lien, and entitled to rank

accordingly and be preferred to that of a mortgage; (2) that a mortgagor in possession is the agent of the mortgagee in obtaining supplies for the vessel, and the lien given therefor binds the interest of the latter as well as the former.

3. REGISTRATION OF MORTGAGE.

Section 4192 of the Revised Statutes, providing for the registration of mortgages of vessels, does not change the nature or operation of the lien of such mortgage, but only provides that without such registration it shall not be valid; and therefore a state law preferring the lien of a domestic material man to that of a mortgage is not in conflict with such section.

In Admiralty.

*W. B. Gilbert,* for libellants.

*Charles Woodward, John H. Woodward,* and *John W. Whalley,* for claimants.

DEADY, D. J. On April 2, 1881, the libellants, William Whitlock and another, constituting the firm of Whitlock & Slover, of New York, intervening for their interest, filed a libel against the Canada to enforce a claim of $676.70 for supplies furnished said vessel in her home port—the city of New York—in which they allege that said supplies were furnished in January and February, 1880, at the request of the owner and upon the credit of the vessel, and were necessary to enable her to proceed upon her contemplated voyage; that the vessel left said port on her voyage on March 6th, and thereafter the libellants, in pursuance of the act of the legislature of New York of April 24, 1862, duly filed a specification of their claim and lien against said vessel, which has not been satisfied, though duly demanded. The claimants, Effingham B. Sutton and others, except to the libel, because it appears that said supplies were furnished at the vessel's home port upon the request of the owner, and therefore the libellants have no lien therefor by the maritime law or by the law of New York, which can be enforced without the jurisdiction of that state.

Since the intervention of these libellants the vessel has been sold upon the order of the court and the proceeds paid out to the original libellants, Thomas F. Neill and others, and other intervenors, until there is not sufficient left in the registry of the court to satisfy the mortgage.

Upon the argument it was also contended by counsel for the claimants that the New York lien act had been declared unconstitutional and void by the courts of that state, and therefore the libellants could acquire no rights under it; citing *The Josephine*, 39 N. Y. 19; *Brookman* v. *Hamill*, 43 N. Y. 554; *Poole* v. *Kermit*, 59 N. Y. 554; *King* v. *Greenway*, 71 N. Y. 413. But, notwithstanding some loose and ambiguous language in the opinions in these cases, implying the unconstitutionality of the act as a whole, it is certain that nothing was decided in any of them but that so much of the act as gave persons having a lien under it a remedy in the state court by a proceeding *in rem* against the vessel, to enforce such liens, was void, upon the ground that the contract in such cases was maritime, and therefore exclusively of admiralty cognizance, except so far as the common law could give a remedy; and that it could not do by process *in rem.*

These decisions were made in obedience to the authority of the then recently-decided cases, in the supreme court, of *The Moses Taylor*, 4 Wall. 411, and *The Hine*, Id. 556.

The validity of the provisions of the act giving the lien, and providing for its registration and effect, were not before the court, or passed upon by it; and such seems to have been the opinion of the circuit court in *The John Farron*, (S. D. N. Y.) in which *Johnson*, J., speaking of the decisions of the New York court in 39 and 43 N. Y. *supra*, says:

"The state lien law was held to be unconstitutional, because it attempted to give process *in rem*, and thus was held to invade the grant of admiralty jurisdiction to the United States. The adjudication did not go beyond the validity of the proceeding *in rem*, and therefore the provision for the lien in the specified cases remains to be enforced, when the contract is maritime, in the courts of the admiralty." 14 Blatchf. 26.

That is this case exactly. The contract to furnish supplies to the Canada was a maritime one, and the lien given by the law of New York to secure its performance may be enforced in the admiralty as an incident, or part of it, wherever the vessel is found. *De Lovio* v. *Boit*, 2 Mass. 474; *The Harrison*, 1 Sawy. 353.

It has been held by the supreme court that, until congress legislates upon the subject, the state may provide a lien for

material men for necessaries furnished to a vessel in her home port. And the lien thus created is declared to be "a right of property and not a mere matter of procedure," which may be enforced in the admiralty, under rule 12, as a lien given by the general maritime law. *The Lottawana*, 21 Wall. 579. And even conceding that the court of New York has decided this state law to be void, it does not follow that this court must be governed by such decision. It is admitted that the national courts are bound, as a rule, to follow the decisions of the state courts in construing its statutes or determining their validity as compared with its organic law. But this is a case where the question of the validity of the state statute arises under the constitution and laws of the United States. The question is, therefore, a federal one, upon which the state court takes the law from the national one, and not the latter from the former.

There is no doubt, then, either upon reason or authority, that the libellants have a lien for their claim which may be enforced in this court as a right pertaining to a maritime contract by virtue of the local law.

The claimants next contend that if the libellants have a lien, it must be deferred to the lien of their mortgage, the registration of which is prior in point of time to that of the lien; and that, if this should be held otherwise, still the lien of the mortgage outranks that for the supplies, because it arises under a law of this forum—the law of the United States providing for the registration of the mortgage, while the other arises under the law of another and foreign forum —the state of New York.

In support of the first proposition, counsel cite *Scott's Case*, 1 Abb. (U. S.) 336; *The Kate Henchman*, 7 Biss. 238; *The Grace Greenwood*, 2 Biss. 131; *The Bradish Johnson*, 3 Woods, 582; *Aldrich* v. *Ætna*, 8 Wall. 491; and section 4192, Rev. St. (9 St. 440,) which declares—

That no bill of sale, mortgage, hypothecation, or conveyance "of any United States vessel shall be valid against any person other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof," unless the "same is recorded in the office of the collector of customs where such vessel is registered and enrolled:" *provided*, that

"the lien for bottomry on any vessel * * * shall not lose its priority or be in any way affected by the provisions of this section."

The cases cited from Bissell, Abbott, and Woods appear to have been decided upon the assumption that the lien or operation of the mortgage is in some way created by or derived from the act of congress, and therefore it is superior to that of the material man.

The act has been twice before the supreme court for consideration, (*White's Bank* v. *Smith*, 7 Wall. 646; *Aldrich* v. *Ætna*, 8 Wall. 491,) and the point there decided, so far as it can be gathered from the opinions of Mr. Justice Nelson, is that, the statute having provided a uniform registration for instruments affecting the ownership of vessels, and declared them invalid, with certain exceptions, unless so registered, by implication it excludes all further state legislation from the subject; as that they should be also registered or filed in the county clerk's office and refiled at the end of a year, or that they should be void unless accompanied by possession. Beyond this these cases do not go, and there is no warrant in them for the doctrine that the mortgage is called into existence by the act of congress, or that its lien or operation is in any way preferred or enlarged by it. On the contrary, it existed and was used as a means of pledging or transferring the property in a vessel under and by virtue of the general law of the state, before the act of congress was passed. Since then, in addition to the formalities prescribed by the state law for its execution it must be registered in the proper collector's office, but when that is done its effect and rank as a lien still depend upon the state law. The registration under the act of congress is simply necessary to make it operative as to third persons without notice of its contents.

So far, then, as I am able to discern, there is nothing in the language or purpose of the act of congress from which it can be inferred that it was the intention to prefer the lien of the mortgagee to that of a material man or any other. As was said in this court in *The Favorite*, 3 Sawy. 409: "There is nothing in the language of the section [4192, Rev. St.] that indicates an intention to enlarge the operation of a

mortgage on a vessel, or place the lien of it in any better condition with reference to other liens than it was before." And this is more evident when we consider that the object of the statute was not to advance or prefer mortgages, but to protect the public against them, by requiring them to be registered in an appropriate and convenient place.

Both the lien of the mortgage and the material man being the creatures of the law of New York, and that having provided that the latter shall be preferred to the former, it is in my judgment decisive of the question here. The respective rights of the parties arise under the law of New York, and by that law the court must be governed in deciding upon them. But apart from the provision of the New York statute preferring the lien of the material man to that of the mortgage, I think it clear, upon general principles of law and right, that it is entitled to such preference. A mortgagor in possession represents the mortgagee, and in contracting debts for necessaries is, therefore, authorized to bind his interest in the vessel for their payment, so far as the law gives a lien therefor. In this respect there is an implied agency between them. Necessaries supplied the vessel through the agency of the mortgagor promote the interest of the mortgagee as well as the mortgagor, either by enabling the latter to navigate her and thus earn money to pay the indebtedness due the former, or to preserve her value as a security therefor.

In the following cases the lien of the material man, though subsequent in point of time, was preferred to that of the mortgagee, either upon the authority of the local statute or the general maritime law: *The John Farron*, 14 Blatchf. 24; *The William T. Graves*, Id. 189; *The Hiawatha*, 5 Sawy. 160; *The Island City*, 1 Low. 375; *The St. Joseph's*, Brown's Adm. 202; *The Norfolk & Union*, 2 Hughes, 123; *The Favorite*, 3 Sawy. 405.

In *The William T. Graves, supra*, the question was whether a title acquired under the foreclosure of a mortgage on a vessel is subject to a lien for repairs put upon her subsequent to the date of the mortgage, and *Johnson*, C. J., in affirming the

decision of *Wallace,* D. J., that it is, said of section 4192, Rev. St., and the proviso thereto, concerning the lien of bottomry:

" The obvious purpose of this proviso was to make it entirely clear that a bottomry bond did not come within the statute requiring certain instruments to be recorded. It might otherwise have been contended that it was in some sense a hypothecation of the vessel, and therefore required to be recorded. It will be observed that the proviso is confined to liens by bottomry. If this proviso be construed to mean that such a lien is only out of the purview of the statute, and that all other liens are postponed to that of a mortgagee, then the claims of salvors, and all those having other strictly maritime liens, would be thus postponed, to the subversion of the whole principle upon which efficacy is given to such claims, and the overthrow of the best-settled and most salutary principles of the maritime law. Indeed, any principle upon which this statute can be expounded to give such priority to a recorded mortgage, would also extend to bills of sale and other conveyances recorded under the same law, and thus practically overthrow the whole scheme of the maritime law upon the subject of maritime liens. This statute, I conclude, therefore, has no relation to the question involved; and the lien of the libellant is left to stand upon the statute of New York, which the courts of the United States *do enforce* in the courts of admiralty."

In conclusion, this is a controversy between two parties claiming liens upon the vessel under the law of New York, which declares that the lien of the material man shall be preferred, and therefore it is entitled to be first satisfied out of the proceeds; and also that the lien of the material man, although given by the local law, is given to secure the performance of a maritime contract, and is practically a maritime lien, and should, therefore, take rank with it, and be preferred to a mortgage. *The William T. Graves, supra,* 192; *The General Burnside,* 3 FED. REP. 232.

The claim of the libellant must be first paid in full, with interest and costs,—$684.52,—and the remainder of the proceeds—$1,680.63—delivered to the claimant.