COAST WRECKING Co. and others *v.* PHŒNIX INS. Co.

*(District Court, E. D. New York.* April 22, 1881.)

1. PRACTICE — MISJOINDER OF PARTIES — AVERAGE ADJUSTMENT OF SALVAGE CLAIMS.

Misjoinder of parties libellant, when not objected to, will not prevent a decree.

Where the cargo of a stranded steamer was saved by wreckers, and by them transported in different lots and different vessels to a place of safety, and there stored:

*Held,* that the service of the wreckers was a continuous service, and all the property saved was liable to contribute towards the salvage, notwithstanding it appeared that part of the service was performed after part of the cargo had been stored in a place of safety.

Where a voyage was broken up by the stranding of the vessel, and the cargo was transferred by salvors to a port not the port of delivery, and by an agreement there made between the parties interested in the cargo and J. & H., average adjusters, the latter received the cargo, sold part that could not be identified, adjusted all claims as to the salvage except that of an insurance company, to whom part of the the cargo was abandoned, and made a statement of expenses incurred for general and particular interest, upon which statement all parties made settlement except the insurance company, who refused:

*Held,* that the service performed by the average adjusters was a service which, in the absence of the agreement with them, would have been necessarily performed by the ship-owners, and was maritime in its character.

That the subject-matter of the agreement with J. & H. being maritime, the contract was maritime, and an action upon the contract could be maintained in the admiralty by them against the insurance company for its proportion.

*Cutter* v. *Rae,* 7 How. 729, considered overruled by *Ins. Co.* v. *Dunham,* 11 Wall. 1.

In Admiralty.

*Sander & Carter,* for libellants.

*Butler, Stillman & Hubbard,* for respondent.

BENEDICT, D. J.  This case presents some novel features. It is an action *in personam* against the Phœnix Insurance Company, which corporation was the insurer of a part of the cargo of the steamer Vindicator, shipped in Fall River, to be transported thence to Philadelphia, and there delivered to various consignees named in bills of lading given upon the shipment of the goods.  It is instituted in behalf of two separate libellants,—the Coast Wrecking Company and the firm of Johnson & Higgins,—whose interests are to a certain extent antagonistic; a recovery of the demand sued for by Johnson & Higgins being fatal to any recovery by the Coast Wrecking Company.  No exception to the libel has been taken upon the ground of misjoinder of libellants.  The right of the Coast Wrecking Company to recover something in this action is admitted.  The right of Johnson & Higgins to recover anything is denied.  The ground taken by the defendants is thus stated in the defendants' brief.

"The libel of Johnson & Higgins should be dismissed, with costs.  A decree in favor of the Coast Wrecking Company, of from $2,000 to $2,500, may be given, but the respondent should not be charged with costs."

Under these circumstances there seems to be no good reason for declining to determine the rights of the several parties arising from the facts proved, notwithstanding the anomalous features presented by the libel.  The material facts are as follows:

The steamer Vindicator, while proceeding upon the voyage already mentioned, on the fourth day of January, 1879, was stranded by stress of weather on the Long Island shore, and placed in a position of such danger as to give rise to the apprehension that both vessel and cargo would prove a total loss.  Upon the situation of the vessel becoming known, the Coast Wrecking Company sent wreckers, divers, and vessels from New York to the steamer, and commenced efforts to save the vessel and her cargo.  It was found impossible to save the vessel, which broke up some 37 days after the arrival of the Coast Wrecking Company.  Most of the cargo was, however, saved and transported by the Coast Wrecking Company to New York, where it arrived in a damaged condition.

Among other cargo so saved were 339 bales of print cloths, 8 cases and 4 bags of yarn, 11 cases, 12 bags of hats, which had been insured by the

Phœnix Insurance Company, and which, by the consent of the consignees thereof, were delivered to the Phœnix Insurance Company in New York. After the stranding had become known in New York, and before any property had been saved, an average bond was given to Johnson & Higgins, average adjusters, signed by the Phœnix Insurance Company and other parties interested in the cargo, by virtue of which Johnson & Higgins proceeded to receive the cargo as it was brought to New York by the Coast Wrecking Company; ascertained the names of the various owners, and the value of the respective shipments; agreed with all the parties interested, except the Phœnix Insurance Company, as to the amount of salvage to be paid the Coast Wrecking Company; sold such parts of the cargo as could not be identified; apportioned the expenses among the parties interested in proportion to their respective shares in the cargo; and made an extended statement showing the amount of the expenses incurred for the benefit of all, and the proportion payable by each, and the amount of special charges due for particular interests.

All parties in interest except the Phœnix Insurance Company paid their share of the expenses, as adjusted and stated by Johnson & Higgins. The Phœnix Insurance Company refused to pay, whereupon this action is brought, and the court is asked in this action to ascertain the proper amount of salvage due for the saving of the cargo insured by the Phœnix Insurance Company, and to decree that such salvage be paid by the Phœnix Insurance Company to the Coast Wrecking Company; and also to decree that Johnson & Higgins recover of the Phœnix Insurance Company the proportionate share of the salvage and expenses above mentioned, as adjusted and stated in pursuance of the average bond, namely, the sum of $9,985.62.

In regard to the claim of the Coast Wrecking Company, the contention on the part of the defendant is:

(1) That although the services of the Coast Wrecking Company extended over a period of 37 or 38 days, beginning on the fourth of January, their services to the cargo ended on the twenty-eighth of January, when all the cargo that was saved had been removed from the vessel and was in warehouses at Staten Island; that none of the services rendered subsequent to that time were for the benefit of any of the cargo, and that as to those services the defendants are not liable for any part performed subsequent to the time when the particular goods insured by them were stored at Staten Island.

(2) That the amount of expense incurred and labor performed by the Coast Wrecking Company is overstated; that their property was not put in peril, and their labor performed at no risk of losing proper compensation therefor, and that they have been overpaid by what they have received from the other parties interested in the cargo.

In regard to the first ground of contention, I remark that if it be assumed that the services performed by the Coast Wrecking Company, during the 37 or 38 days they were

employed at the Vindicator, was not a continuous service, properly chargeable, in due proportion, to all the property saved, and that the services performed at the vessel, after the cargo had been separated from the vessel and stored at Staten Island, cannot be said to have been rendered to the cargo, it is not possible to say, in regard to the services performed in immediate connection with the cargo, that any particular service and no other was rendered to the cargo insured by the defendant. On the contrary, in my opinion, the service performed by the Coast Wrecking Company in relation to the cargo was a continuous one, in which all the cargo saved was interested, and was undertaken for the benefit of all. The burden should, therefore, be borne in due proportion by all the cargo saved, including that insured by the defendants.

In regard to the objection to the Coast Wrecking Company's demand of 50 per cent. as a proper salvage compensation, to be paid by the property saved by their efforts, that it is excessive, I must say that I deem a salvage of 50 per cent. liberal; but I cannot say that, in view of all the circumstances, it is excessive. It has not so appeared to any other of the parties interested, all except the defendants having agreed to that amount, and actually paid their proportionate share thereof.

My determination, therefore, in this action, so far as it is an action by the Coast Wrecking Company to recover salvage, is that 50 per cent of the value of the goods delivered to the Phœnix Insurance Company, according to the value fixed by the average statement, is a proper salvage reward; and as a promise on the part of the Phœnix Insurance Company to pay a proper salvage is to be implied from the fact that they received the cargo subject to a lien therefor, a decree for that amount will be rendered herein in favor of the Coast Wrecking Company.

The remaining branch of the case pertains to the demand of Johnson & Higgins, average adjusters. From this demand the amount of the salvage due on the cargo received by the defendants has been eliminated by the determination just

made in favor of the salvors themselves, and the claim is reduced to one for services rendered and disbursements made in connection with the cargo by Johnson & Higgins in their capacity of average adjusters.

The foundation for this claim may be supposed to be the average bond referred to in the libel. I say supposed, because the averments of the libel are sadly wanting in particularity. The cause has been argued by the advocate for the defendants upon the same supposition. To any recovery upon this bond the defendants object—*First*, that the contract provides only for "such losses and expenses as may constitute a general average," and here there were no such expenses, inasmuch as the voyage was abandoned, and the community of interest between vessel, freight, and cargo terminated by the stranding. But the contract is not, as the advocate supposes, confined to "such losses and expenses as may constitute a general average." The instrument first recites that losses and expenses have been incurred in consequence of the disaster to the Vindicator which may constitute a general average, and that other charges thus incurred may apply to and be due from special interests.

After this recital comes the covenant, and that is not to pay "such losses and expenses as may constitute a general average," but in substance that the loss or damage aforesaid —that is to say, the losses and expenses incurred in consequence of the disaster which shall be made to appear to be due when stated and apportioned in accordance with established usage and the laws of this state in similar cases—shall be paid by the subscribers according to their respective interests. This covenant fairly enough covers the expenses of the services rendered by Johnson & Higgins, and their disbursements made in connection with the cargo, notwithstanding it be not a case of general average. By this covenant the defendants bound themselves to pay to Johnson & Higgins their proportionate share of any expenses or disbursements chargeable according to established usage and the laws of this state in similar cases.

It is not to be doubted, I think, that this covenant is broad

enough to cover proper compensation for those services performed by Johnson & Higgins which were incident to the ascertainment and adjustment of the proportionate share of the losses and expenses incurred by reason of the disaster chargeable to such interest.

The next ground of objection to a recovery by Johnson & Higgins in this action, upon the average bond in question, is that such a contract cannot give rise to a case of admiralty maritime jurisdiction. No authority has been cited in support of this position, and it is, in my opinion, without foundation in authority or reason. There is no doubt, I suppose, that the services provided for in the average bond are services which, if performed by the ship-owner, would be within the line of duty imposed upon him by his contract of affreightment, for New York was not the port of delivery of this cargo, and the ship-owner continued to be responsible for the preservation, care, and safe custody of the cargo until it was accepted by the consignees, or until that responsibility was shifted from the ship-owner by the action of the consignees.

In the absence of an agreement on the part of the consignees with Johnson & Higgins, the ship-owner would have been required to perform precisely the service that was performed by Johnson & Higgins under the agreement in question. That service, if performed by the ship-owner, would certainly have been maritime in character, and it is not seen how any change in the character of the service was effected by making it the subject of a written agreement with Johnson & Higgins. The consignees consented that Johnson & Higgins should do what, in the absence of such consent, the ship-owner would have been compelled to do, and for which the ship-owner would have been entitled to ask the defendants to contribute. The object of the agreement was to secure the performance, by Johnson & Higgins, of a maritime service that forms part of every contract of affreightment wherein the agreement is to pay "freight and average accustomed," and the contract is to my mind as clearly maritime as is a charter-party or a bill of lading.

In the much-criticised case of *Cutter* v. *Rae*, 7 How. 729, (see 6 McLean, 574; 1 Parson's Maritime Law, 333,) it was decided by the supreme court of the United States that when cargo subject to contribution in general average is delivered to the consignee, discharged of the maritime lien for such contribution, the maritime law does not, and the common law does, imply a promise to pay the contribution, and that an action upon a promise implied by the common law, but not by the maritime law, is not a case of admiralty and maritime jurisdiction. But the question here does not relate to a promise resting solely upon a common-law presumption. This is the case of an express contract for the performance of a maritime service. Besides, *Cutter* v. *Rae* must be considered to have been over-ruled by the subsequent case of *Insurance Co.* v. *Dunham*, 11 Wall. 1, when *Cutter* v. *Rae* was vainly relied on to defeat the jurisdiction of the admiralty over a policy of insurance; for, as suggested by *Curtis*, J., (*Gloucester Insurance Co.* v. *Young*, 2 Curtis, 334,) it would be somewhat remarkable if the admiralty were held to have jurisdiction over an express contract to indemnify one for what he might be obliged to contribute in a general average, and not to have jurisdiction over an express contract to contribute to the loss. My opinion, therefore, is that Johnson & Higgins can maintain an action in the admiralty to recover for the services and disbursements provided for in the average bond upon which they sue.

The only question left to be determined is whether the services and disbursements charged in the adjustment are within the scope of the agreement, as being in accordance with established usage and the laws of this state in similar cases; and, if so, what is the value of these services and the amount of the disbursements? Upon all these points the case is devoid of any testimony save only that of Mr. Krebs, one of the firm of Johnson & Higgins, who proves that the services performed by Johnson & Higgins, in this case, were such as are usually performed by average adjusters in similar cases; and that the sums charged therefor in their statement are a reasonable compensation for such services.

It has been strenuously contended that these charges are

exorbitant, but the difficulty is that no testimony has been produced to support such a contention. All the testimony upon the subject is to the effect that the charges are not exorbitant, and I have been unable to see wl y I should be asked to cut down these charges when the only witness called upon the subject proves them correct.

Accordingly, my conclusion is that the libellants Johnson & Higgins are entitled to a decree against the Phœnix Insurance Company for the proportionate share of the expenses stated in the adjustment attaching to the goods received by the Phœnix Insurance Company, as those expenses are apportioned by the adjustment, deducting of course the salvage and the commissions paid for collecting and paying the same. If any other directions are required to conform to this opinion, they may be called to my attention on the settlement of the decree, at which time the amount to be inserted in the decree can, no doubt, be ascertained by agreement of the parties, without the expenses of a reference.