## The Queen of the Pacific.

*(District Court, D. Oregon. December 18, 1883.)*

ADMIRALTY RULE 38—"PROCEEDS OF PROPERTY" THEREUNDER.

A ship and cargo were saved from a common peril after a considerable jettison of the latter, and allowed by the salvors to proceed to their destination, where the saved cargo was delivered, by the master or agent, to the consignees without contribution for salvage or jettison, but on the deposit by each consignee of a sum of money equal to 20 per centum of the value of the cargo delivered to him, "to cover general average," and the execution of a bond for the payment of his proportion of the "losses and expenses" consequent upon such peril. *Held*, (1) that the salvage service being for the benefit of both ship and cargo, the expense thereof constituted a general average; and (2) that in a suit against the ship and cargo for salvage, the libelants might elect to treat such deposit as so far a substitute for the cargo delivered and require the agent of the vessel, under admiralty rule 38, to bring the same into court to answer the exigency of such suit.

In Admiralty.

*M. W. Fechheimer*, for libelants.

*Cyrus A. Dolph*, for claimant.

DEADY, J. On October 13, 1883, the steam-ship Queen of the Pacific and cargo were libeled in this court upon a claim for salvage by George H. Flavel and others, the owners, managers, and employes of and on the steam-tugs C. J. Brenham, Astoria, Columbia, and Pioneer. On the same day the vessel was arrested and claimed by C. H. Prescott, managing agent, for the owner, the Pacific Coast Steam-ship Company. On October 15th the libelants filed a petition herein, under the admiralty rule 38, asking that the managing agent aforesaid be required to show cause why certain moneys deposited with him by the consignees of the Queen's cargo should not be brought into court to answer the exigency of this suit; and on November 3d said agent filed an answer to the petition, and the matter was argued and submitted on November 10th.

From the statements in the petition and the libel to which it refers, and the answer thereto, and accepting the latter when they differ from the former, it appears that on September 4, 1883, the steam-ship Queen of the Pacific, then being of the value of $550,000, while on a voyage from San Francisco to Portland with a cargo of not less value than $200,000, and 300 passengers, grounded about noon, in a dense fog, on Clatsop spit, at the mouth of the Columbia river, and on the following day, at or near high tide, in the afternoon, was pulled off by the steam-tugs aforesaid, under the direction and management of the libelants, after throwing overboard about one-fourth in value of her cargo, and allowed by the salvors to proceed on her voyage to Portland, where the remainder of her cargo was delivered to the respective consignees; said agent first demanding and receiving from each of said consignees a deposit in money equal to 20 per centum of the value of such consignment "to cover general average and other

charges," and also a bond or agreement for the payment of his proportionate share of "the losses and expenses" caused by the stranding and saving of said vessel and cargo, as aforesaid, to be ascertained by certain named "average adjusters, in accordance with the established usage and laws."

Since the argument of the application, and on December 1st, the claimant answered the libel, by which it admits that "said tugs rendered valuable aid and assistance to said steamship in enabling her to get off from said spit," and alleges that the value of the vessel is of no greater sum than $485,000, and that at the time of said stranding she had on board 1,860 measured tons of assorted cargo of the value of $315,000, of which 632 measured tons were jettisoned, of the value of about $95,000. Where a ship and cargo are saved from a common peril, each must bear its proportion, according to its value, of the compensation decreed to the salvors, but neither is liable for the salvage due from the other. 2 Pars. Ship. & Adm. 263, 304. *The Leathers and Cargo*, Newb. Adm. 427. The libelants, therefore, have no claim against the Queen for saving the cargo, and unless they are entitled to have this money brought into court as a substitute for the cargo, they cannot, in this respect, obtain any relief in this suit.

It may be admitted that this deposit is not the "proceeds" of the cargo within the letter of rule 38, because it was not actually derived from the sale of it. But it was obtained by the claimant from the consignees of the cargo as a condition precedent to its delivery to them, to stand for and in the place of the cargo, in certain contingencies. Now, if this claim for salvage is one of such contingencies, then I think the money is so far the "proceeds" of the cargo, within the spirit and equity of the rule, and ought therefore to be brought into court to answer such claim accordingly. The contingency upon which this deposit was to stand for the cargo delivered was the liability of the latter to a general average contribution, consequent upon the stranding of the vessel upon which it was then being carried. So far as appears, there are only two items that can enter into this account in this case. They are salvage, and the value of the property jettisoned. There is no doubt about the second one, in any case, but the first one depends on circumstances. An expense incurred for salvage for the benefit of a ship or cargo is a particular average charge upon either the ship or cargo, as the case may be, but where such expense is incurred for the benefit of both, it constitutes a general average.

In *Peters* v. *Warren Ins. Co.* 1 Story, 468, Mr. Justice STORY says:

"General average is commonly understood to arise from some voluntary act done, or sacrifice or expense incurred, for the benefit of all concerned in the voyage or adventure; and then it is apportioned upon all the interests which partake of the benefit. But the mere fact that an apportionment is made of a loss between the different parties in interest, if the loss itself does not arise from some act done or sacrifice or expense voluntarily incurred for the common benefit, does not make it necessarily a case of general average by our law. Salvage is properly a charge apportionable upon all the interests and property

at risk in the voyage which derive any benefit therefrom. But, although it is often in the nature of general average, it is far from being universally true that, in the sense of our law, all salvage charges are to be deemed a general average. On the contrary, these charges are sometimes a simple average or partial loss. We must, therefore, look to the particular circumstances of the case to ascertain whether it be the one or the other."

In *Job* v. *Langton*, 6 El. & Bl. 779, the court says: "All expenses incurred from the misadventure, till all the cargo has been discharged, confessedly constitute a general average." And in 1 Pars. Ship. & Adm. 362, it is said that "salvage, * * * being for the benefit of all persons concerned in ship, cargo, and freight, falls within the rule of general average." See, also, Id. 436.

The expense of salvage in this case, whatever it may be, was consequent on the misadventure of stranding the vessel, and the service was certainly for the benefit of both ship and cargo. Consequently it is a general average—one of the items which the deposit was made to meet. The bond which was taken to meet the "losses and expenses" incurred by the stranding, as might be ascertained by the "average adjusters," must be considered a further security for the payment of the contribution that may be found due from the consignees for the loss occasioned by the jettison, in case the deposit should be found insufficient to satisfy it and the expense of salvage.

The claimant was allowed by the salvors, in the interest of commerce, and for the convenience of all concerned, to bring the saved property into port, where the master or agent assumed the responsibility of delivering the saved cargo to the consignees, without payment of salvage or contribution for the jettison, but taking, at the same time, a deposit and bond from each of them as a substitute and security therefor. In so doing he acted as the agent of all the persons concerned. 1 Pars. Ship. & Adm. 473. And I think that so far as this deposit is concerned, it ought to be regarded for this purpose as a substitute for the cargo, and that the libelants may ratify the substitution, and claim the benefit of it in this suit. The contribution for the jettison is a matter between the ship and cargo, but the contribution for salvage is one for which they are both bound to the libelants, in proportion to their value.

While this conclusion is only just to the libelants, it is not prejudicial to the rights of any one. It reaches the manifest equity of the case, and is, I think, fairly within the spirit and purpose of the admiralty rule 38.

The prayer of the petition is granted; and it appearing that the agent has in his hands not less than $30,000 of such deposit, he is required to bring the same into court to answer the exigency of this suit, and particularly the claim of the libelants against said saved cargo for salvage.