GRAND TRUNK RY. CO. OF CANADA *v.* GRIFFIN and others.

*(Circuit Court, D. Maine.    August 4, 1884.)*

TOWAGE—PASSAGE THROUGH DRAW IN BRIDGE—NEGLIGENCE OF DRAW-TENDER —NEGLIGENCE OF TUG—STRANDING OF VESSEL—DIVISION OF DAMAGES.

The schooner C., while being towed by the steam-tug M., was passing with a flood-tide from east to west, and with the wind blowing hard from the north, through a draw in a railway bridge, and the draw not being wide enough for both to pass at once, the tug fell behind. The draw-tender, acting in accordance with the custom of himself and his predecessors for many years, assisted in making fast the lines, and in casting them off, so as to speed the passage of the schooner, and his negligence in casting off one of such lines put the schooner

adrift, so as to be impelled by the wind and tide towards the *southern* shore. After she had drifted once or twice her length, the tug, following her as quickly as possible, overtook her, and made fast to her port side, prevented her from grounding on the *southern* shore, swung her head around into the channel, which was quite broad, and pushed her against the wind across the channel towards the *northern* shore, but, by negligence and mismanagement, pushed her too far in that direction, so that she stranded on *that* shore, at a distance of at least 800 feet from the place where she was cast adrift, or from the place where the tug was made fast to her again. *Held,* that the whole damage caused by such stranding must be borne by the tug.

In Admiralty.

*A. A. Strout,* for appellant.

*B. T. Thompson,* for appellees.

GRAY, Justice. This case, though involving but a small amount, presents interesting questions of law.

The owners of the steam-tug Magnet filed a libel *in personam* against the Grand Trunk Railway Company of Canada, to recover damages sustained by the schooner Cumberland while being towed by the steam-tug. The libel alleged that in the afternoon of December 2, 1882, while the schooner and tug were passing with a flood-tide from east to west through a draw in the railway company's bridge across Back Bay, a part of Portland harbor, and the wind blowing hard from the north, the draw-tender negligently cast off one of the lines by which the schooner was attached to the railway company's pier by the side of the draw, so that she became unmanageable and began to drift towards the south shore, and the tug followed and made fast to her, and towed her back into the channel, and the schooner grounded on the north shore of the channel, and was thereby injured, and the accident was caused wholly by the negligence of the defendant's servant in casting off the line, and thus making the schooner unmanageable. The answer denied that it was any part of the duty of the railway company or its servants to receive and make fast, or to loose and cast off, the lines of vessels passing through the draw; and alleged that the schooner was stranded by the fault and negligence of those in charge of the tug, and not by any negligence on the part of the railway company. The district court decided that the stranding of the schooner was occasioned by the fault of those in charge of the tug, as well as by the fault of the servant of the railway company in charge of the draw; ordered the damages caused by the stranding to be divided between the two parties; and decreed in favor of the libelants for $154.44, being a moiety of those damages, and for costs. From that decree the railway company has appealed to this court. The libelants have taken no appeal.

The evidence clearly establishes the following facts: The pier of the railroad company extended from the railroad bridge 153 feet eastward, and 163 feet westward, and was not accessible by land, except by that bridge. The schooner was 129 feet long, and the tug about 65 feet long. The tug fell behind in passing through the draw, which

was not wide enough for both at once. The tide was on the flood, near high water, and favored the passage through the draw. The draw-tender, acting in accordance with the custom of himself and his predecessors for many years, assisted in making fast the lines, and in casting them off, so as to speed the passage of the schooner. His negligence in casting off one of the lines was the cause, and the only cause, which set the schooner adrift, so as to be impelled by the wind and tide towards the southern shore. After she had drifted once or twice her length, the tug, following her as quickly as possible, overtook her, and made fast to her port side, prevented her from grounding on the southern shore, swung her head round into the channel, which was quite broad, and pushed her against the wind across the channel towards the northern shore, but by negligence and mismanagement pushed her too far in that direction, so that she stranded on that shore, and was injured. The distance of the place of stranding, in the most direct line, either from the place where she was cast adrift, or from the place where the tug was made fast to her again, was nearly 800 feet, or more than six times the length of the schooner.

Considering the nature of the draw-tender's office, the position of the pier, the want of any other person posted thereon to assist the passage of vessels through the draw, the importance to the passage of trains of having the draw closed as promptly as possible, the delay and embarrassment which would necessarily result if the whole duty of attaching and casting off lines were left to those in charge of vessels, and the previous custom of the tender of this draw to take part in that duty, there can be no doubt that his negligence in this particular was the negligence of his master, the railroad corporation, for the consequences of which the corporation was responsible.

But the question remains whether the stranding of the schooner was a consequence of that negligence. No decision directly in point has been cited at the bar; but some aid may be derived from the rules established in analogous cases.

In admiralty, when an injury is caused by the fault of both parties, both are jointly and equally responsible, and each must bear the burden of half the damages. Thus, in the familiar case of a collision between two vessels, caused by the fault of both, the entire damage is divided equally between the two; if only one suffers damage, her owners recover half the damage against the other vessel; if both suffer damage, half the difference between their respective losses is awarded in favor of the one that suffers the most. *The Catharine*, 17 How. 170; *The North Star*, 106 U. S. 17; [S. C. 1 Sup. Ct. Rep. 41;] *Hay* v. *Le Neve*, 2 Shaw, App. Cas. 395; *Stoomvaart Maatschappij Nederland* v. *Peninsular & Oriental Steam Navigation Co.* 7 App. Cas. 795. So, if a vessel, negligently managed, strikes against a pier unlawfully erected in navigable water, her owners may recover half the damage by libel *in personam* against the owner of the pier. *Atlee* v. *Packet Co.* 21 Wall. 389.

When a collision between two vessels is caused by the fault of the one only, she is liable for the immediate damage to the other vessel, and also for damages resulting from reasonable and proper efforts of her master and crew to save her from the condition in which she has been left by the act of the wrong-doer, as well as for any other consequential damages fairly attributable to that act. But if it is proved that a subsequent stranding of the injured vessel was caused by the negligence of those in charge of her, when they could by the use of ordinary nautical skill have avoided it, the vessel originally in fault is responsible for the immediate effect of the collision only, and for no part of the damages by the stranding. *The Narragansett,* 1 Blatchf. 211; *The Baltimore,* 8 Wall. 377; *The Countess of Durham,* 9 Monthly Law Mag. (Notes of Cases,) 279; *The Pensher,* Swab. 211; *The Linda,* Id. 306; *The Flying Fish,* Brown. & L. 436; S. C. 3 Moore, P. C. (N. S.) 77.

Within the rules thus established, if in the case at bar the schooner had, by the negligence of the railroad company's servant at the draw, been dashed against the pier or the bridge, and been thereby damaged, and had afterwards been stranded by the negligence of those in charge of her, the railroad company would have been responsible for the immediate damages of the collision, but for no part of the additional damages of the stranding.

The only difference in principle between the case supposed and this case is that here no damage was done at the draw, and the whole damage was caused by the stranding. The only negligence on the part of the defendant was at the draw, setting the schooner adrift towards the southern shore. It was the negligence of the master of the tug alone, after the tug had been made fast again to the schooner, had turned her away from the southern shore, and had brought her into the channel, that caused her to run aground on the northern shore.

With great reluctance to overrule the district judge upon such a question, I am therefore constrained to hold that the stranding was caused exclusively by the fault on the part of the libelants, and to order the decree below to be reversed and the libel dismissed.