## THE CONVEYOR.

### (District Court, D. Indiana. September 26, 1906.)

### No. 475.

1. MARITIME LIENS—CLAIMS FOR WAGES OR SUPPLIES—PRIORITY OVER MORT-
GAGES.

Liens on a vessel for seamen's wages or supplies, given by the maritime
law, or by state laws, have priority over mortgages.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens,
§ 62.

Maritime liens, The George Dumois, 15 C. C. A. 679; The Nebraska, 17
C. C. A. 102; The Electron, 21 C. C. A. 21.]

2. ADMIRALTY—JURISDICTION TO ADMINISTER FUND.

Although a court of admiralty has not jurisdiction to foreclose mort-
gages on vessels, when it has a fund to dispose of, it may entertain
claims based on mortgages, and its jurisdiction to administer a fund ap-
plicable, in whole or in part, to the payment of maritime liens, being ex-
clusive, is not affected by the fact that mortgagees may also have claims
against the same fund or by the pendency of foreclosure suits brought by
them in a state court.

3. SAME—INSURANCE MONEY—AGREEMENT BETWEEN LIEN CLAIMANTS.

A vessel insured under a policy payable to the owners was sunk; the
insurance was adjusted, and the money paid to a custodian under an
agreement between the owners, various lien claimants, and certain mort-
gagees that it should be applied (1) to pay for the raising of the boat;
(2) to the payment of all maritime, labor, and supply liens against it; (3)
to the repair of said boat; and (4) the remainder to be paid to the mort-
gagees. The boat was raised, but was not repaired, and was sold in ad-
miralty proceedings by the lien claimants. *Held*, that the contract under
which the insurance money was held was maritime, and the fund subject
to administration by the admiralty court, unaffected by the fact that the
contract was not fully executed, and that under its terms the seamen and
supply claimants were entitled to payment from the fund, leaving the
mortgagees to resort to the proceeds of the vessel for any deficiency on
their claims.

4. SEAMEN—LIEN FOR WAGES—INSURANCE MONEY.

Seamen having liens for wages on a vessel which was sunk are en-
titled to enforce the same against insurance money paid on account of the
loss to the owners or their assignees, subject only to claims for salvage
services in raising and preserving the vessel, where the proceeds of the
vessel when sold are insufficient to pay the same.

In Admiralty. Heard on exceptions of Seraph Semonin, Farmers'
National Bank of Uniontown, Ky., and Levi Englebright and Eliza-
beth Jenkins, to the supplemental and amended libels, and the several
supplemental and amended intervening libels.

Iglehart & Taylor, for libelant.

Posey & Chappell and Andrew J. Clark, for claimants.

ANDERSON, District Judge. The question raised by the excep-
tions of the respondents Semonin, Farmers' Bank of Uniontown, Ky.,
and Englebright & Jenkins is whether, under the facts alleged in
the supplemental and amended libel of Wallace, and the amended and
supplemental intervening claims of various seamen and materialmen for
wages and supplies, the $2,000 proceeds of an insurance policy on

the steamboat now in the custody of the respondent Clark, should be applied by this court to the payment of the balance due on the claims for labor and supplies, after exhausting the fund in the registry of the court derived from the sale of the boat.

After setting up facts establishing the claim for wages, the libel alleges in substance that the steamboat Conveyor was an American vessel whose home port was Evansville, engaged in navigating the Ohio and Green rivers; that the boat was owned by the respondents Semonin and Ott; that prior to the filing of the libel the boat was sunk on the waters of the Kentucky shore of the Ohio river nearly opposite Evansville; that the boat was insured against perils of the river in a solvent insurance company for $4,500, and the loss upon said boat, exclusive of the value of the wreck, was adjusted at the sum of $2,000, which sum was paid by the insurance company to the owners of the boat, Semonin and Ott, who thereupon paid the same to the respondent Andrew J. Clark, pursuant to the terms of an agreement hereinafter referred to. At the time the wreck occurred, the respondents Englebright & Jenkins held a mortgage on the boat for the sum of about $800; and the respondent Farmers' Bank of Uniontown, Kentucky, held a mortgage on said boat for the sum of $1,500; each of said mortgages contained a printed covenant on the part of the owners of the boat that they would insure said boat in a solvent insurance company to be selected and approved by the mortgagee; the policy was made payable to the owners of the boat, and had never been assigned to either of the mortgagees, but at the time the wreck occurred the policy was in the possession of the respondent Farmers' Bank of Uniontown, Ky., who claimed to hold the same as collateral for its loan. It is then alleged that at the time the wreck occurred a controversy arose between the claimants, the mortgagees, and the owners of the boat as to how the insurance money ought to be paid, held and applied; that upon a conference between all the parties in interest it was believed that the wreck of said boat could be raised and economically repaired and its debts paid; that for the purpose of making an effort to raise said boat and repair the same, and to discharge the admiralty liens, and liens for wages, labor, and supplies done and furnished to said boat, as the same are set out in the libel and intervening libels—

"It was then and there agreed by and between the holders of both of said mortgages and said owners of said boat, and the holders of said liens against said vessel, that whatever steps were necessary to be done should be done to procure the payment of the amount of said policy, as the same was or should be finally adjusted and agreed upon, and that when the check issued and paid by the said insurance company upon said loss, * * * should be delivered, the same should be cashed and delivered to and placed in the hands of the respondent Andrew J. Clark, who should hold the same for the uses and purposes following, to wit:

"First, to pay the expenses of raising said boat, which were then estimated at $400, which was in fact the expense subsequently incurred for the raising of said boat; second, to pay all of said maritime, labor and supply liens against said boat; third, to repair said boat; and, fourth, the balance remaining, after the payment of the items hereinbefore set out, should be delivered to the said mortgagees."

It is then alleged that pursuant to said agreement the $2,000 insurance money was paid to the owners Semonin and Ott who delivered same to the respondent Clark; that one Robert Hornbrook was employed by the respondent Clark to raise the boat for the agreed price of $400; that the boat was raised by said Hornbrook and brought into the port of Evansville, and thereafter the libel and the intervening claims were filed. It is also alleged that at the time of the filing of the libel by Wallace, suit was pending in the superior court of Vanderburgh county by Englebright & Jenkins for the foreclosure of their mortgage and the respondents Semonin and Ott and Andrew J. Clark were made defendants; that the Farmers' Bank of Uniontown, Ky., intervened in said suit, each of said mortgages claiming that it is entitled to the fund in the hands of said Clark; that said suit is still pending. On November 15, 1905, the libelant filed his petition for the sale of said boat, the terms of which were consented to by the owners of the boat, Semonin and Ott, and by the respondents Clark and Farmers' Bank of Uniontown, Ky., and thereupon an interlocutory order of sale was made by the court, and J. W. Wartmann was appointed special master to make said sale. Among other terms and conditions of said order of sale was the following:

"That said steamboat Conveyor, her tackle, apparel, and furniture, and machinery, be sold * * * for cash for not less than $500, exclusive of any liens on said boat for the raising of her to be ascertained by the master. * * * Said property shall be sold discharged from all liens which shall be transferred to the fund arising from such sale and this order shall be without prejudice to the right of libelant, or any intervening libelant, to assert in this proceeding any claim to the insurance money alleged in the libel to be in the custody of the defendant, Andrew J. Clark."

In compliance with said order of sale, and after due notice, the boat was sold by the special master to Robert Hornbrook for the sum of $900 cash; and, on December 19, 1905, the master filed his report of sale, which was duly approved by the court. The report of sale contains among other things, the following:

"That said property sold for $900 which amount was a compliance with the order of sale aforesaid, which required said property to bring not less than $500, exclusive of costs of raising said boat to be ascertained by the master. That I ascertained and fixed the cost of such raising in the sum of $400 which was made under an agreement between A. J. Clark and Robert Hornbrook, and thereupon the said sum of $900 was paid to me in cash, and I issued a certificate of purchase to the said Robert Hornbrook, as purchaser, for said sum, subject to the approval of this court, and in said certificate of purchase stated that the said cost of raising said vessel, $400 should be protected out of the proceeds of said sale, but without prejudice to the right of the libelant in said cause to claim that said cost of raising said boat should be paid out of the insurance money in the hands of A. J. Clark. Any controversy in relation thereto to be determined by this court."

It is then alleged in the supplemental and amended libel that, after the sale of said boat, and after the payment of the $900 proceeds into the registry of the court, "by inadvertance, and without any knowledge on the part of said libelant, or his counsel, the said sum of $400 has been paid to the said Robert Hornbrook out of the proceeds of the sale of said vessel" instead of requiring him to wait until

the question whether the sum should be paid out of the insurance money was determined by this court. The supplemental and amended libel contains the prayer, among other things, that the respondent Andrew J. Clark may be required to pay the said insurance money into the registry of this court, and that the claims of all liens set out in the libels and intervening libels be declared to be prior to the claim of the said several mortgages, in and to the said insurance money, etc. The claims for wages aggregate $536.24; for supplies and materials furnished, $674.96; and the claim of Robert Hornbrook for raising the boat, $400; and for caretaking etc., up to the time of the sale, $130.50; making the grand total of all claims filed, $1,741.70.

It is contended by the libelant that under the facts pleaded the $2,000 insurance money, by agreement of the parties in interest, stands in lieu of the boat to the extent of being liable for the payment in full of the balance due on the claims for labor, supplies and raising the boat, after applying thereto the $900 realized from the sale of the wreck. On the other hand it is claimed by the respondents that the agreement was not executed, since it was found impracticable to repair the boat, and that, therefore, the claim of Hornbrook in the sum of $400 for raising the boat was rightfully paid from the proceeds of sale as a salvage claim prior in equity to the liens of the seamen and materialmen for wages and supplies; that the admiralty court has no jurisdiction to foreclose mortgages, therefore it is without jurisdiction to administer the fund of $2,000 insurance money since the policy was under the terms of the two mortgages issued for the exclusive benefit of the mortgagees and owners; and that the suit pending in the superior court of Vanderburgh county, to which the respondent Clark is a defendant, is a complete bar to any proceedings in admiralty seeking to subject the insurance money to the payment of maritime liens.

It is well settled that liens on a vessel under maritime or state laws have priority over mortgages. The Josephine Spangler (D. C.) 9 Fed. 773; The Guiding Star (D. C.) 9 Fed. 521; The Canada (D. C.) 7 Fed. 730. The maritime law gives priority to claims for supplies furnished in a foreign port, and for seamen's wages. The law of Indiana, enforceable in admiralty, makes seamen's wages and supplies furnished in ports of the state prior in equity to the lien of the mortgages. 2 Burns' Rev. St. 1901, §§ 7239–7241. Though a court of admiralty has not jurisdiction to foreclose mortgages on vessels (Bogart v. The John Jay, 17 How. 402, 15 L. Ed. 95), yet, when it has a fund to dispose of it may entertain claims based on mortgages (The Katie O'Neil [D. C.] 65 Fed. 111; Black Diamond Coal Co. v. O'Neil [D. C.] Id.). If, therefore, jurisdiction in admiralty to administer the insurance money exists in this cause, it is not affected by the fact that the mortgagees may also have claims against the same fund. Nor is the jurisdiction ousted because of the commencement of the suit in the superior court of Vanderburgh county, for the jurisdiction of the admiralty court to enforce maritime liens against boats is exclusive. Ballard v. Wiltshire, 28 Ind. 341. The

policy of insurance was payable to the owners Semonin and Ott, who were liable in personam as well as in rem to claims for seamen's wages. The insurance company refused to pay the mortgagees, and paid the owners on surrender of the policy. The amount of the policy was $4,500. The amount paid, $2,000, represented an adjustment based upon the difference between a total loss and the value of the vessel when raised. The owners placed the money in the hands of Clark under an express agreement (1) that at least $400 thereof should be expended in raising the vessel; (2) that the liens for wages and supplies should be paid; (3) that the boat should be repaired; (4) that the remainder should be paid to the mortgagees. The libelants were parties to this agreement. Jurisdiction to reach the $2,000 proceeds of the insurance policy in the hands of the respondent Clark, placed with him pursuant to the agreement pleaded, depends upon the determination of the questions: (1) Whether the agreement under which the money was placed in the custody of Clark, and providing for the disposition thereof, was. a maritime contract; and (2) whether the libelants have any interest in the fund by virtue of that contract and their liens.

1. Whether a contract is maritime or not depends, not on the place where the contract was made, but on the subject-matter of the contract. New England Mar. Ins. Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. A contract which stipulates with the libelants that "their charge for attending to the carrying out of docking, with crew's assistance, raising steamer, clearing and keeping dock clear of water to an extent necessary for working at the shaft while she is undergoing repairs, covering, releasing, rent, and all expenses that may be incurred in carrying out of such repairs, to be $2,500," to be paid on the satisfactory termination of the contract, is purely maritime concerning which admiralty has jurisdiction. The Vidal Sala (D. C.) 12 Fed. 207. See, also, Coast Wrecking Co. v. Phœnix Ins. Co. (C. C.) 13 Fed. 127; Id. (D. C.) 7 Fed. 236; DeLeon v. Leitch (D. C.) 65 Fed. 1002; The Iris, 100 Fed. 104, 40 C. C. A. 301. The fact that such an agreement was not fully executed, but remains executory, does not affect the admiralty jurisdiction. Boutin v. Rudd, 82 Fed. 685, 27 C. C. A. 526; Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90. Upon the foregoing authorities, it is plain that the agreement pleaded, being for the raising of the vessel, the payment of maritime liens for labor and supplies, the repair of the vessel—all to be paid out of the proceeds of the insurance policy, and the remainder to be paid to the mortgagees, constituted a maritime contract.

2. Have the libelants any interest in the fund which will authorize the admiralty court upon a libel in rem to require the money to be paid into the registry for distribution to the libelants upon their claims? It is obvious that even if no step had been taken in execution of the contract the admiralty court would have jurisdiction of a libel against the owners, the mortgagees and the respondent Clark for breach of the maritime contract in question. See, Boutin v. Rudd. 82 Fed. 685, 27 C. C. A. 526. It is held in The City of

Norwich, 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134, 493, in a collision case where limitation of liability was asserted by the owners of the offending vessel under section 4283, U. S. Rev. St. [U. S. Comp. St. 1901, p. 2943] that the proceeds of an insurance policy on a vessel constitute no part of the owner's interest in the vessel. Section 4283, however, is a statutory abridgment of the liability of shipowners, and applies only to the classes of claims therein enumerated. The language of the section is as follows:

"Section 4283. The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

Act June 26, 1884, c. 121, § 18, 23 Stat. 57 [U. S. Comp. St. 1901, following section 4289, p. 2945], provides as follows:

"That the individual liability of a shipowner, shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending. Provided, that this provision shall not affect the liability of any owner incurred previous to the passage of this act, nor prevent any claimant from joining all the owners in one action; nor shall the same apply to wages due to persons employed by said shipowners."

No case has been called to the attention of the court construing the language of the act of June 26, 1884. It is held in The City of Norwich, supra, that insurance money is not part of an owner's "interest" in the vessel. There is a well reasoned dissenting opinion by four of the justices. The doctrine, however, has never been applied to a lien for wages, concerning which Justice Story said in Brown v. Lull, Fed. Cas. No. 2,018:

"The wages of seamen attach as a lien to the ship and freight, and their proceeds, into whosoever hands they may come, as a claim or privilege, having a priority to be satisfied before all other claims. As it has been sometimes expressively said, they are nailed to the last plank of the ship. The ship is a pledge for the payment, while a single fragment remains of the wreck or its proceeds."

It must be remembered that the insurance was by the terms of the policy payable to the owners Semonin and Ott. The policy was not assigned. In so far as it can be deemed to be collateral to the mortgage loans, the mortgagees' interest in the amount paid on the policies to the owner of the boat would be subject to prior equities of the claims for wages and supplies if the insurance money can be held to be "proceeds of the wreck."

In Sheppard v. Taylor, 5 Pet. 675, 8 L. Ed. 269, a libel was filed for seamen's wages in the year 1810. The ship had been seized by the Spanish government off the coast of Chili and condemned as a prize. The owners became insolvent and assigned their claims against the Spanish government to various creditors. The value of the ship, cargo and freight was paid under the Florida treaty by Spain to the

assignees of the owners. Thereupon, as the case is stated by the court (page 708 of 5 Pet. [8 L. Ed. 269]):

"In December, 1825, the libelants filed a new libel, by way of petition, against the owners, and against their assignees, setting forth their grevances in a more aggravated form; and alleging the award and receipt of the proceeds by the assignees, and the promises of the owners to indemnify and pay them out of the proceeds, whenever recovered, to the full amount of their wages; and accounting for their not having proceeded to a decree in personam against the owners, except so far as to have a docket entry in June 1822 of a decree 'on terms to be filed' (which was afterwards rescinded), solely upon the faith of those promises; and praying process against the owners and also against the assignees, to pay them the amount out of the proceeds in their hands. Answers were duly filed by the owners and the assignees; the former asserting that they had parted with all their interest in the funds; and the latter asserting their exclusive title to the same, under the assignments, and denying any knowledge of any agreement of the owners in respect to the claim of wages, or of the other matters stated in the petition."

It was held that the fund in the hands of the assignees was liable for the full amount of the claims, with interest and costs. In the course of the opinion, it is said by Mr. Justice Story (page 710 of 5 Pet. [8 L. Ed. 269]):

"In our opinion there is no difference between the case of a restitution in specie of the ship itself, and a restitution in value; the lien reattaches to the thing and to whatever is substituted for it. This is no peculiar principle of the admiralty. It is found incorporated into the doctrines of common law and equity. The owner and the lien holder, whose claims have been wrongfully displaced, may follow the proceeds, wherever they may distinctly trace them. In respect, therefore, to the proceeds of the ship, we have no difficulty in affirming that the lien in this case attaches to them. * * * Over the subject of seamen's wages, the admiralty has an undisputed jurisdiction, in rem as well as in personam; and wherever the lien for wages exists, and attaches upon the proceeds, it is the familiar practice of that court, to exert its jurisdiction over them, by way of monition to the parties holding the proceeds. This is familiarly known in the cases of prize, and bottomry, and salvage; and is equally applicable in the case of wages."

In Brown v. Lull, Fed. Cas. No. 2,018, a neutral ship was captured and afterwards the ship's value was paid under treaty, partly to the owners, and partly to the underwriters. On a libel for seamen's wages, the owners contended that, as they were not paid the full value of the ship under the treaty, the seamen's claims should be collected from the underwriters who received a moiety of the ship's proceeds. In disposing of this contention, Justice Story said:

"Suppose the testator [owner] had assigned his whole interest in the ship and freight, instead of a partial interest, for a valuable consideration; could it be for a moment admitted, that he could thereby change his own responsibility to the seamen, or turn them over for their compensation to mere strangers? Certainly not. It is quite a different question, whether they might not proceed upon their implied trust or lien against the proceeds, in whosesoever hands they could find them. But the shipowner, by his own voluntary act of cession, cannot discharge himself from his original liability under his contract; for the value of the ship and freight, to whomsoever paid, must be deemed a payment by his consent and for his benefit."

See, also, Vandeveer v. Tilghman, Fed. Cas. No. 16,846.

It follows, upon the authority of the foregoing cases, that independently of the agreement pleaded, the seamen who have filed claims

for their wages are entitled to resort to the insurance money in the hands of the respondent Clark, for the full payment of their claims with interest and costs. A salvage service, in raising and preserving a sunken steamboat, has a priority of lien over claims for wages earned and supplies furnished before the accident. Collins v. The Fort Wayne, Fed. Cas. No. 3,012; The Lady Boone (D. C.) 21 Fed. 733. The agreed price for raising the boat was $400. The claim of Hornbrook for care taking to time of sale is $130.50. The claims for wages, exclusive of interest and costs, aggregate $536.24. The boat sold for $900. Thus it is seen that there is a deficit of nearly $200, which, independently of any agreement of the nature pleaded, gives the court jurisdiction to cause the insurance money as a part of the proceeds of the wreck, to respond to claims for seamen's wages, salvage, and costs. In addition to the foregoing aggregate, there have been filed claims for supplies amounting to $674.96. In view of the agreement pleaded in the libel, have these claimants the right to resort to the insurance money for the payment of their claims?

The claimants for supplies were parties to the agreement. They held liens prior in equity to the lien of the mortgage. The Josephine Spangler (D. C.) 9 Fed. 773; The Guiding Star (D. C.) 9 Fed. 521: The Canada (D. C.) 7 Fed. 730. The policy of insurance was, as we have seen, payable to the owners, and was not assigned to either mortgagee. In the absence of any assertion of a claim to a limitation of liability on the part of the owners, there would be no question of the right of the materialmen to pursue the fund in the hands of the owners by libel in case the wreck had been abandoned or no attempt made to raise the vessel. But at that time it appeared possible to raise and repair the vessel; and all parties consented to an adjustment with the insurance company by payment of $2,000 upon a $4,500 policy upon the express condition that $400 should be expended out of the proceeds for the cost of raising the boat; that all liens for labor and supplies should be paid; and that the boat should be repaired before Clark should pay any part of the insurance money to the mortgagees. It is the opinion of the court that this agreement contained ample consideration to support it on the part of the materialmen, who in common with the seamen, were thereby induced to forego any action in personam against the owners of the boat in the event the wreck should be abandoned or no attempt made to raise her. Having raised the boat under the agreement in question, it is not perceived why the contract should not have been performed to the extent possible under its terms, so far as the lienholders are concerned. There is nothing in the agreement pleaded giving the mortgagees priority as to their claims over the materialmen, nor is there any part of the contract which requires the materialmen, the seamen, or the salvor to bear any part of the loss in the event the agreement could not be carried out in full. On the contrary, the agreement is express that the claims of the materialmen, as well as the seamen and salvor shall be paid from the insurance, leaving the body of the boat when raised responsive to any deficit in the claims of the mortgagees.

In the case of The Queen of the Pacific (D. C.) 18 Fed. 700, a

ship and cargo being in peril were saved after considerable of the cargo was jettisoned. The salvors allowed the boat to proceed to its destination, where the master delivered the cargo to the consignees without contribution for salvage or jettison, but on deposit by each consignee of a sum of money equal to 20 per cent. of the value of the cargo delivered "to cover general average," and the execution of a bond for the payment of his proportion of the "losses and expenses" consequent upon such peril. In a suit against the ship and cargo for salvage, it was held that the libelants might elect to treat such deposit as so far a substitute for the cargo delivered and require the agent of the vessel, under admiralty rule 38, to bring the same into court to answer the exigency of such suit. The materialmen and seamen in the libel now under consideration have elected to treat the insurance money placed in the hands of the respondent Clark as a substitute for the body of the boat; and, in the opinion of the court, the agreement in question warrants such substitution on principle and upon the authority of The Queen of the Pacific, supra.

Rule 38 of the admiralty rules, is as follows:

"In cases of mariners' wages or bottomry, or salvage, or other proceedings in rem, where freight or other proceeds of property are attached to or are bound by the suit, which are in the hands or possession of any person, the court may, upon due application, by petition of the party interested, require the party charged with the possession thereof to appear and show cause why the same should not be brought into court to answer the exigency of the suit; and if no sufficient cause is shown, the court may order the same to be brought into court to answer the exigency of the suit; and upon failure of the party to comply with the order may award an attachment, or other compulsory process, to compel obedience thereto."

The libel prays for appropriate relief in accordance with the provision of rule 38.

It follows that the exceptions of the respondents to the several libels should be overruled, and it is so ordered.