A. M. BRIGHT GROCERY CO. v. LINDSEY et al.

(District Court, S. D. Alabama, S. D.   June 3, 1915.)

No. 1523.

MARITIME LIENS ⬡⬢35—PROPERTY AFFECTED—INSURANCE MONEY.

The lien of one who furnished supplies to a vessel at the request of its owner or master does not, after the destruction of the vessel by fire, attach to the insurance money, which is the proceeds of a collateral personal contract between the owner and the insurer, and not of an interest in the vessel.

[Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. ⬡⬢35.]

In Admiralty. Libel by the A. M. Bright Grocery Company against H. M. Lindsey and others. On exceptions by the respondents to the libel. Exceptions sustained, and libel dismissed.

Webb & McAlpine, of Mobile, Ala., for libelant.

Hanaw & Pillans, of Mobile, Ala., for respondents.

TOULMIN, District Judge. This is a libel filed by the A. M. Bright Grocery Company, on its own behalf and of all other creditors similarly situated, who may desire to intervene in their interests, against H. M. Lindsey, as owner of the steamboat American, and against the fire insurance money under a policy of fire insurance issued by Phœnix Assurance Corporation of Liverpool, through W. K. P. Wilson & Son, as agents of said Assurance Corporation, seeking to subject said insurance money to the payment of its claim for groceries and supplies furnished in the years 1914 and 1915 to said steamboat on the request and order of the master or owner of said steamboat. The libel alleges that the said steamboat was destroyed by fire in April, 1915 The libelant prays that process be issued by the court to and against said Lindsey and said Assurance Corporation, with said agents in the City of Mobile, and against the fire insurance money payable under said policy, and that they be cited and required to show cause why they should not pay the said insurance money into this court, in order that the right of the libelant may be determined according to the nature and priority of such claim as it may or claim to have. And libelant prays that the court will decree a prior lien in its favor against said insurance money, and also may condemn the same to pay the libelant's demand, and will decree the full payment of its claim out of said money.

The defendants have duly appeared, and have filed exceptions to the libel, alleging cause why they should not be required to pay said insurance money into the court as prayed. The exceptions filed by the defendant Lindsey are as follows:

First. That this honorable court is without jurisdiction to hear and determine the subject-matter sought to be heard and determined by the said proceeding, for that the libel is in fact a creditors' bill in equity seeking to impress an equitable lien upon certain funds which are not subject thereto.

Second. That this court is without jurisdiction to hear and determine the matters sought to be by said libel heard and determined in this court, for the

reason that the libel is not a libel in personam against Henry M. Lindsey, seeking to·recover for a debt due him, but is a libel in rem against moneys upon which, on the facts stated, there is no maritime lien, and the said Lindsey, and other parties in the caption of the libel mentioned, are made parties simply as incidents to the impressing of the lien on the money arising from the insurance policy on the steamer American, and not in an effort to procure any personal judgment against Mr. Lindsey or the other parties.

Third. If the libel be treated as in part a libel in personam against Lindsey, and as such a proceeding of which the admiralty court has jurisdiction, then the libel is°bad, in that it seeks to bind in one proceeding a libel in personam, of which the court has jurisdiction, with a libel in rem against the proceeds of insurance of the steamer American, on which libelants had a lien, and which steamer was destroyed by fire, and libelants have no lien by substitution on the insurance money or proceeds of the insurance.

Fourth. The libel is bad, for that it confuses a cause of action against Henry M. Lindsey in personam with an effort, that cannot be sustained in law, to fix or impress a maritime lien by substitution upon the·proceeds of the insurance of the burned steamer American in lieu of the vessel herself, which was destroyed by fire.

Like exceptions were filed by the other respondents.

The libelant's attorney has based his claim and his right to a decree in his favor on a decision in the case of The Conveyor, opinion by Judge Anderson, of the United States District Court in Indiana, reported in 147 Fed. 586. I have carefully read and considered that opinion, I have quoted largely from the opinion of Judge Anderson to learn the facts of the case, and his argument and reasons on which he based his opinion and decree, which I will now read and endeavor to show wherein the case now before the court is·so entirely different in. its facts and circumstances as to render said opinion inapplicable to the instant case, and without authority in it:

Semonin & Ott were owners of the steamboat Conveyor, which was insured against perils of the river (Ohio) for $4,500. The boat was sunk. The loss on the boat was adjusted at the sum of $2,000. The boat was raised at à cost of $400, and was then sold for $900. At the time the wreck occurred, the Farmers' Bank of Uniontown, Ky., and Englebright & Jenkins held each a mortgage on the boat. The $2,000 was paid by the insurance company to the owners of the boat, Semonin & Ott. Said bank's and said Englebright & Jenkins' mortgages contained a covenant on the part of the owners of the boat that they (the owners) would insure the boat, and they did so. The policy was made payable to said owners, and had never been· assigned to either of the mortgagees; but at the time the wreck occurred the policy was in the possession of the Farmers' Bank of Uniontown, Ky., who claimed to hold the same as collateral for its loan. At the time the wreck occurred a controversy arose between the mortgagees and the owners of the boat as to how the insurance money ought to be paid and applied. The owners of the boat held the money. There were also intervening claims of various seamen and materialmen for wages and supplies, for which libels had been filed. Upon a conference between all the parties in interest it was believed that the wreck of said boat could be raised and repaired and sold and its debts paid; that for the purpose of making an effort to raise the said boat and repair her, and to discharge the admiralty liens, the liens for ·

wages and supplies done and furnished to said boat, it was agreed by and between the holders of both of said mortgages and said owners of the boat and the holders of said liens against the boat that such steps as were necessary should be taken to procure the payment of the amount of the policy as the same should be finally adjusted and agreed upon, and when the amount was paid by the insurance company upon said loss the same should be delivered to and placed in the hands of one Clark, who should hold the same for the uses and purposes, as follows: First, to pay the expenses of raising said boat; second, to pay all of said maritime, labor, and supply liens against said boat; third, to repair said boat; and, fourth, the balance remaining, after the payment of the items hereinbefore set out, should be delivered to the said mortgagees.

The boat was raised; one of the libelants filed a petition for the sale of the boat, which was consented to by the owners of the boat; an order of sale was made by the court, and the boat was sold for $900 cash. This sum was paid to said Clark, and the $2,000 insurance money was also placed in the hands of said Clark, in accordance with the agreement of all the parties in interest. It was found impracticable to repair the boat, but $400 was paid for raising her out of the $900 realized from the sale of the wreck. Whereupon a controversy arose between the libelants on claims for labor on and supplies to the boat, and the holders of the said mortgages on said boat; the libelants contending that by agreement of the parties in interest the $2,000 stood in lieu of the boat to the extent of being liable for the payment in full of the balance due on their claims after applying thereto the amount realized from the sale of the wreck. On the other hand, it was contended by the mortgagees that the admiralty court had no jurisdiction to foreclose mortgages; therefore it was without jurisdiction to administer the fund of $2,000 insurance money, since the policy was under the terms of the two mortgages issued for the exclusive benefit of the mortgagees and owners.

The court stated that it is well settled that liens on a vessel under maritime or state laws have priority over mortgages. The court held that, though a court of admiralty has not jurisdiction to foreclose mortgages on vessels, yet when it has a fund to dispose of it may entertain claims based on mortgages, and also held that the law of Indiana, enforceable in admiralty, makes seamen's wages and supplies furnished in ports of the state prior in equity to the lien of the mortgagees. If, therefore, jurisdiction in admiralty to administer the insurance money exists in this cause, it is not affected by the fact that the mortgagees may also have claims against the same fund. The court said:

"The policy of insurance was payable to the owners, Semonin & Ott, who were liable in personam as well as in rem to claims for seamen's wages. The insurance company refused to pay the mortgagees, and paid the owners on surrender of the policy. * * * The owners placed the money in the hands of Clark under an express agreement (1) that at least $400 thereof should be expended in raising the vessel; (2) that the liens for wages and supplies should be paid; (3) that the boat should be repaired; (4) that the remainder should be paid to the mortgagees."

The libelants were parties to this agreement. So were the mortgagees and the owners of the boat. The court said that:

Jurisdiction to reach the "proceeds of the insurance policy in the hands of said Clark, placed with him pursuant to the agreement pleaded, depends upon the determination of the questions: (1) Whether the agreement under which the money was placed in the custody of Clark, and providing for the disposition thereof, was a maritime contract; and (2) whether the libelants have any interest in the fund by virtue of that contract and their liens. Whether a contract is maritime or not depends * * * on the subject-matter of the contract. * * * It is plain that the agreement pleaded, being for the raising of the vessel, the payment of maritime liens for labor and supplies, the repair of the vessel—all to be paid out of the proceeds of the insurance policy, and the remainder to be paid to the mortgagees—constituted a maritime contract." The Conveyor (D. C.) 147 Fed. 590; Insurance Co. v. Dunham, 11 Wall. 1, 20 L. Ed. 90; The Iris, 100 Fed. 104, 40 C. C. A. 301.

The court, in the case of The Conveyor, said that:

"Independently of the agreement pleaded, the seamen who have filed claims for their wages are entitled to resort to the insurance money in the hands of the respondent Clark, for the full payment of their claims," and, "independently of any agreement of the nature pleaded, gives the court jurisdiction to cause the insurance money as a part of the proceeds of the wreck, to respond to claims for seamen's wages."

I do not agree with the court in its opinion that "independently" of the agreement the seamen and the supply claimants were entitled to resort to the insurance money in the hands of Clark for the full payment of their claims; nor do I agree in the opinion that "independently of any agreement" the court had "jurisdiction to cause the insurance money, as a part of the proceeds of the wreck, to respond to claims for seamen's wages." I consider that the proceeds of the wreck was the purchase money paid for it, and the insurance money was due and paid to the owners of the boat to indemnify them for their loss in the sinking of the boat. The money paid them was their money, and was voluntarily placed by them in the hands of said Clark for certain uses and purposes in compliance with the agreement by and between said owners, both of the mortgagees and the holders of said liens against the said boat. In view of the *agreement*, the claimants had the right to resort to the insurance money for the payment of their liens.

The controversy in The Conveyor Case was between the holders of said liens against the vessel and the mortgagees, and I think the decree rendered was right. As hereinbefore stated, I differ with the court in the opinion that the holders of the liens were entitled to resort to the insurance money for the payment of their claims *independently of the agreement pleaded*. I am rather inclined to think that that statement by the court was inadvertently made. Moreover, the court in its opinion said:

"The seamen in the libel * * * have elected to treat the insurance money placed in the hands of the respondent Clark as a substitute for the body of the boat; and, in the opinion of the court, the agreement in question warrants such substitution on principle and * * * authority." 147 Fed. 594.

I consider that the gist of the opinion is that the agreement controlled the decision of the case so far as the insurance money was concerned.

"The insurance is no part of the owner's interest in the ship * * * within the meaning of the law, and does not enter into the amount for which the owner is held liable." It is "perfectly well settled * * * that the insurance which a person has on property is not an interest in the property itself, but is a collateral contract, personal to the insured, guaranteeing him against loss of the property by fire or other specified casualty, but not conferring upon him any interest in the property." Insurance is required "to be for indemnity merely. * * * The contract of insurance does not attach itself to the thing insured, nor go with it when it is transferred. * * * The insurance does not follow" the property when sold, "unless the insurer consent to the transfer of the policy to the grantee of the property. * * * The owner of the property is under no obligation to have the property insured. It is purely a matter of his own option, and, being so, it would seem to be only fair and right, and a logical consequence, that if he chooses to insure he should have the benefit of the insurance." City of Norwich, 118 U. S. pages 494-495, 6 Sup. Ct. 1150, 30 L. Ed. 134.

In the case here the facts and circumstances are different from those in The Conveyor Case as they appear from the pleadings here. The facts here are that the steamboat American was owned by H. M. Lindsey, one of the respondents. She was engaged in the navigation of the rivers of Alabama as a carrier of passengers and freight. Her owner had her insured against loss by fire and other casualties. In the business and operation of the boat, the Bright Grocery Company furnished her with necessary supplies on the order of her owner, and acquired, under the law, a lien on the boat for payment for the supplies. The boat was subsequently totally destroyed by fire, before the supplies were fully paid for. The libel was filed by the Bright Grocery Company to subject the insurance money to the payment of the debt due him, claiming a lien on said money therefor. The insurance company, a foreign corporation, and also its local agent in Mobile, are made respondents to the libel. They respectively except to the libel, and to the claim therein set up to a lien on said insurance money.

It does not appear that said insurance money has been paid to the owner, but is still in the hands of the insurance company or its agent, doubtless due to the bringing of this suit. It does not appear that any other creditor with a lien, if any, is interested in the suit. There is no agreement or obligation on the part of the owner of the boat to pay said insurance money, when collected, into court for the payment of the debt sued for, and the court is of the opinion that it is without authority or jurisdiction to order it to be done.

The exceptions to the libel are sustained, and the libel is dismissed. It is so ordered.